701 So.2d 706 (1997)
STATE of Louisiana
v.
Eugene FORREST.
No. 97-KA-0027.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
Rehearing Denied December 1, 1997.
*707 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for Plaintiff/Appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant.
Before LOBRANO, ARMSTRONG and JONES, JJ.
JONES, Judge.
Eugene Forrest was charged by bill of information with two counts of purse snatching, and one count of simple robbery. He filed a pro se Motion to Quash based on La.C.Cr.P. art. 578(2), the statutory prohibition of commencement of trial after two years from institution of prosecution. (The motion was not denied prior to trial, and only after this Court ordered the trial court to respond to the issue was the motion denied on May 2, 1997). A six-member jury found Mr. Forrest guilty of one count of purse snatching and one count of simple robbery. A multiple bill was filed, but at the hearing the trial court granted the defense's motion to quash the multiple bill as untimely. Mr. Forrest was then sentenced to serve fifteen years at hard labor on the purse snatching conviction and seven years at hard labor on the simple robbery conviction with credit for time served since the date of arrest; the sentences were ordered to run concurrently.

STATEMENT OF FACTS:
Mrs. Dannie Pritchett, who was sixty-five years of age at the time of trial, testified that she was in the laundromat on the corner of St. Phillip and Marais Streets on December 21, 1991, at about 8:40 a.m. when she walked out to put her clothes in her car. Her purse, covered by a towel, was on the floor of the front seat of her car. As she set the laundry on the car's back seat, a man appeared in the front seat of her car and said, "Give me your pocketbook." Mrs. Pritchett tried to reach for her purse, but the man "scooped it up," pushed her away, and ran to a nearby car. A woman was in that car, and when the assailant got in, she got out. Mrs. Pritchett approached this person to ask why she got out of the car, and she answered that she knew the man was going to take Mrs. Pritchett's purse. Mrs. Pritchett returned to the laundromat and asked someone there to call the police. She then drove to the police station and made a report. Two days later she identified Mr. Forrest from a photographic line-up as the man who took her purse. Mrs. Pritchett said she did not give the man permission to take her pocketbook.
Mr. Ronald Wyndham, superintendent of the Saint Vincent DePaul Cemetery, testified that at about 11:55 a.m. on December 7, 1991, he was in his office when a man came to the door to ask to use the telephone because his truck was stalled. Mr. Wyndham turned to get the telephone book to give to the man, but suddenly the man grabbed Mr. Wyndham around the chest and took the two wallets he kept in his two back pockets and money from his front pocket. At that point Mr. Wyndham saw his associate, Mr. Robert Duvio, through the window and screamed for help. The assailant then let go of Mr. Wyndham and raced out of the office, knocking down Mr. Duvio who was just entering. Mr. Wyndham followed the man and saw him get into a brown four-door Mercury. He noted the license plate and called 911 to report the *708 incident and license plate. Mr. Wyndham did not give the assailant permission to take his belongings. Several days later, Mr. Wyndham identified Mr. Forrest from a photographic line-up as the man who robbed him.
Mr. Richard Dowling, a cabdriver, testified that he picked up Eugene Forrest and a woman on the corner of North Claiborne and Esplanade Avenues on December 26, 1991, and took them to Orleans and Tonti Streets. After Mr. Forrest got out of the cab, the woman asked Mr. Dowling to call the police because the man was wanted; Mr. Dowling made the call. Shortly thereafter, Mr. Forrest came back to get into the cab, but it stalled. Mr. Forrest and the woman then began to walk away; but the police arrived and Mr. Dowling pointed out Mr. Forrest as the man reported as wanted.
In his appeal, Mr. Forrest offers two assignments of error: (1) the trial court erred in denying his motion to quash, and (2) the trial court erred in denying his motions for mistrial based on the improper and prejudicial comments and arguments made by the State in summation.

ERRORS PATENT:
A review of the record for errors patent reveals none.

FIRST ASSIGNMENT OF ERROR
Mr. Forrest filed a motion to quash on May 3, 1994. In the motion he argued that the time limitation for commencement of trial had expired based on La.C.Cr.P. art. 578(2). In his appellant brief, Mr. Forrest argues that the trial court erred in denying his motion to quash, but this argument is based on the false assumption that the trial court denied the motion immediately prior to trial. Actually, the trial court on May 2, 1997, denied the Mr. Forrest's motion to quash based on La.C.Cr.P. art. 578(2). In brief Mr. Forrest mistakenly states that the denial occurred immediately before trial and bases his argument on that assumption; however, the transcript reveals that at the hearing immediately prior to trial, the court denied Mr. Forrests' motion to quash the indictment as to counts one and two on different grounds. At that hearing Mr. Forrest asked to be allowed to represent himself. When the trial court denied the request saying that Mr. Forrest had not "made statements like that before," Mr. Forrest explained,
I've never been in the court. I filed a motion seven months ago, a motion to quash. I wrote a letter and everything to you. How can I state anything. I haven't been in the courtroom since December 12, 1992, and had anything done on this case until now.
At that point the trial court and defense counsel were concerned with whether Mr. Forrest should play some part in representing himself, and no reference was made to the motion to quash on the grounds that the time limitation for trial had expired.
The procedural history of this case is as follows. The bill of information was filed on February 3, 1992; arraignment occurred on February 6, 1992; the defense filed discovery motions February 12, 1992. On March 9, 1992, at the request of the State and defense, the court reset the hearing for April 6, 1992; on that date the trial court continued the matter for the defense. And reset the matter for April 30, 1992. On May 22, 1992, a preliminary hearing and hearing on the motion to suppress the identification was held; the State called witnesses, and the defense did not; the court continued the hearing as an open matter, and it was not concluded until the day of trial. There followed a series of minute entries which state "status held" and indicate when the next status hearing would be held, or simply reset the matter. Those hearings occurred on June 5, 1992, August 4, 1992, September 11, 1992, October 2, 1992, October 7, 1992, October 14, 1992, and November 5, 1992. At the hearing on December 1, 1992, the court continued the matter on behalf of the State and the defense. Then followed another series of status hearings held on: December 16, 1992, January 27, 1993, February 25, 1993, April 5, 1993, May 18, 1993, June 29, 1993, August 23, 1993, and September 21, 1993. A pre-trial hearing was set on November 22, 1993, for December 2, 1993; the matter was heard on December 20, 1993, to "no avail," and trial was set for February 2, 1994. On that day *709 the court granted the defense a continuance and reset trial for March 28, 1994, but on March 4, 1994, the trial court reset trial for April 11, 1994. Again the trial court granted both the State and the defense a continuance until May 24, 1994. On May 3, 1994, the defendant filed a pro se motion to quash. On May 24, 1994, July 7, 1994, and October 18, 1994, trial was continued because of other trials in progress. On November 22, 1994, a pre-trial conference was held, and on December 5, 1994, the trial occurred.
In State v. Woodfox, 291 So.2d 388 (La. 1974), the Louisiana Supreme Court held that the failure of a trial judge to act on a motion to quash is an irregularity or error in the proceedings to which (a) defendant must object. According to La.C.Cr.P. art 841, an irregularity or error cannot be availed of after the verdict unless it was objected to at the time of trial. Therefore, (a) defendant's failure to object to the omission of a hearing or ruling on the motion to quash constitutes a "waiver of the objection and an acquiescence in the irregularity." Woodfox, 291 So.2d at 390.
However, we must distinguish Woodfox from the case sub judice. Here Mr. Forrest announced prior to trial that he filed a motion to quash, but neither the trial court nor the defense attorney responded to his statement. Because he had also filed a motion to quash the bill of information as to counts one and two on different grounds, the trial court and the defense attorney may not have concluded he referred to a motion to quash on time limitations. Mr. Forrest wrote a letter which was received by the trial court on November 3, 1994; therein he stated that he did not want his assigned attorney to represent him because Mr. Forrest "asked him to check on a motion of [sic] quash I personally filed on the 5/3/94 to your court, he refused .... And I would like to know the disposition of that motion." (Emphasis in original).
Mr. Forrest's pre-trial speech and his letter are certainly a lay person's attempts to object to the trial court's failure to rule on his motion to quash. Further, Mr. Forrest complained about his counsel's failure to act on his behalf. This is not the usual case where the defendant appears to acquiesce because he does nothing; here Mr. Forrest raised the issue and was ignored. Additionally, we cannot say it was improper for Mr. Forrest to file a motion to quash pro se when he is represented by counsel, because the trial court allowed Mr. Forrest to act as his own counsel.
La.C.Cr.P. art 578(2) provides that trial must begin within two years from the date of institution of prosecution in noncapital felony cases. However, the two-year limitation of art. 578(2) was suspended on many occasions in this case. La.C.Cr.P. art. 580 provides: "When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitations established by Article 578 shall be suspended until the ruling of the court thereon, but in no case shall the state have less than one year after the ruling to commence the trial." In State v. Jones, 620 So.2d 341, 342-343 (La.App. 5th Cir.1993), the court stated:
LSA-C.Cr.P. art. 578 establishes a two year prescriptive period from institution of prosecution to commencement of trial in non-capital felony cases. LSA-C.Cr.P. art. 580 provides for suspension of that prescriptive period when a defendant files a motion to quash or another preliminary plea. The period is suspended until the ruling of the court, but in no case shall the State have less than one year after the ruling to commence trial. State v. Watkins, 594 So.2d 501 (La.App. 5 Cir.1992), writ denied, 600 So.2d 654 (La.1992).
A motion for a continuance filed by a defendant is a preliminary plea under LSA-C.Cr.P. art. 580 which suspends the running of the prescriptive period. State v. Fabacher, 362 So.2d 555 (La.1978); State v. Cranmer, 306 So.2d 698 (La.1975). Joint motions to continue likewise suspend the period of limitation. State v. Simpson, 506 So.2d 837 (La.App. 1st Cir.1987), writ denied, 512 So.2d 433 (La.1987).
Here, the docket master indicates the court reset the trial on a motion of the defense as late as February 2, 1994, (just one day shy of two years from the filing of the charges); that the court granted a continuance *710 at the request of both the State and the defense on April 11, 1994, (twenty-six months after filing of charges against the defendant); and that on December 5, 1994, the defense counsel was still filing preliminary motions (a motion for exculpatory material, a motion to quash the indictment on count one, another motion to quash counts one and two of the indictment by the defendant, a motion to prohibit reference to evidence of other crimes, and to prohibit introduction of hearsay evidence of the State). On December 5, 1994, the day of trial, the trial court found probable cause for the defendant's arrest and denied the motion to suppress the identification. Nothing in the record indicates that the State was responsible for the delay in getting to trial; moreover, the period for prescription was interrupted. Thus, it appears the time limitations of art. 578 did not expire prior to trial.
In addition to the right to a speedy trial provided in La.C.Cr.P. art. 578, another right exists under La.C.Cr.P. art 701(D). That article requires that after a defendant and his counsel file a motion for a speedy trial, trial must commence within 120 days if the defendant is in custody and within 180 days if he is not in custody. Because a motion for a speedy trial was not filed in the case at bar, this article does not apply.
Although there may have been no violation of the defendant's right to a speedy trial under the statutory time limitations, the real issue here is whether his constitutional right to a speedy trial provided by the Sixth Amendment of the U.S. Constitution was violated. In State v. Johnson, 622 So.2d 845, 848 (La.App. 4th Cir.1993), this Court discussed the right:
This is a fundamental right which has been imposed on the states by the due process clause of the Fourteenth Amendment. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). Whether this right has been violated is determined by a four-part test: the length of the delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2192; State v. James, 394 So.2d 1197, 1200 (La. 1981).
In Barker, the Court noted that the length of delay is a triggering mechanism, and the other three factors need not be addressed unless the court finds the length of delay to be presumptively oppressive given the circumstances of the case. See also Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
In State v. Leban, 611 So.2d 165 (La.App. 4th Cir.1992), writ denied 619 So.2d 533 (1993), where the State appealed the quashing of an arson charge against the defendant, this Court looked to the four Barker factors and found the sixteen month delay between the filing of the bill and the quashing of the charge was presumptively prejudicial, thereby triggering consideration of the three remaining Barker factors. This Court noted that of the seven continuances in the case, four were at the request of the State, one of which was granted when a State witness was not served. Two continuances were by the trial court, one due to the judge's absence and one due to an ongoing trial. The defense continuance was due to an emergency involving the defense counsel's family. In addition, the State had nolle prosequied the charge once when its motion for continuance had been denied. With respect to the third factor, there was no indication that the defendant had objected to any of the continuances, nor did the defendant invoke his right to speedy trial until he filed his motion to quash the charge. With respect to the prejudice factor, the defendant, although on bond, had missed sixteen days of work because of court appearances. Taking all these factors into consideration, this Court found that the trial court did not abuse its discretion by quashing the charge against the defendant. This Court based its decision on the multiple continuances at the request of the State.
Likewise, in State v. Firshing, 624 So.2d 921 (La.App. 4th Cir.1993), writ denied 93-2621 (La.2/25/94), 632 So.2d 760, this Court found that the trial court did not abuse its discretion by quashing the charges against the defendants after a seventeen month delay between indictment and trial.
*711 In the case at bar, the original charges were instituted on February 3, 1992. Thirty-four months elapsed between the filing of charges and the trial. As per Leban and Firshing, this time delay is presumptively prejudicial, thereby triggering the other three Barker factors.
The second factor, the reasons for the delay are not given. Three continuances were requested jointly by the State and the defense and three were requested by the defense. However, considering Mr. Forrest's concerns and his desire to have new counsel, we do not know whether the "joint" continuances were with the consent of Mr. Forrest. However, it does not appear that any continuances were requested by the State alone.
With respect to the third factor, Mr. Forrest did not assert his right by filing a motion for speedy trial. As to the fourth factor, the prejudice he has suffered, Mr. Forrest has been incarcerated since February 1992.
The Louisiana Supreme Court considered a case where more than two years had passed after indictment and before trial. State v. Joseph, 93-2734 (La.6/3/94), 637 So.2d 1032. The defense counsel's motion to quash was denied on the grounds that the scheduling of other trials by the court was beyond the State's control, but the Supreme Court reversed the denial of the motion to quash, noting "unparticularized allegations of a crowded docket do not satisfy" the State's burden to bring trial in a timely fashion. The Court further declared:
The state has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in Art. 578 were either interrupted or suspended. State v. Rome, 630 So.2d 1284 (La.1994); State v. Nations, 420 So.2d 967 (La. 1982).....
The trial court therefore erred in denying the motion to quash. We have never required a showing of specific prejudice once the defendant has demonstrated that the prosecution has exceeded the limits imposed by Art. 578, and the state has failed to carry its burden of justifying the delay. [Cites omitted].
State v. Joseph, 637 So.2d at 1032-33.
In the case at bar, although there is no question that the time period exceeded the limits proscribed by La.C.Cr.P. art. 578, the record does not completely explain the reasons trial was delayed. Moreover, the State, submitting its untimely brief, has not met its heavy burden of proof, and since the defense attorney thought the motion to quash had been denied prior to trial, she did not address the issue.
Because the defendant's constitutional right to a speedy trial may have been violated, we are compelled to remand this matter for a full evidentiary hearing.

SECOND ASSIGNMENT OF ERROR
Mr. Forrest argues next that the trial court erred in denying the defense objections and motions for a mistrial based on the improper and prejudicial comments the State made in closing argument.
La.C.Cr.P. art. 774, which governs the scope of argument, provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Even if closing arguments go beyond the scope of article 774, the arguments are harmless unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, Byrne v. Louisiana, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Williams, 575 So.2d 452 (La.App. 4th Cir. 1991), writ denied 578 So.2d 130 (La.1991).
During closing arguments, the prosecutor stated:
Our job is to seek justice. His job is to defend, to get someone off, in other words, *712 to put them on the street where they can strike again.
The defense attorney objected and moved for a mistrial, and the trial court overruled the objection and denied the motion. The prosecutor continued:
There has been a judge presiding over this matter. If anything improper had been done, you would know about it. And if any thing improper was ever done, he would put a stop to it.
Again, the defense attorney objected, noting, "[t]hat is a miss statement [sic] of what happens." The trial court overruled the defense's objection and pointed out that this is "argument" not "fact or evidence."
Mr. Forrest now argues that the trial court was wrong to overrule the objection to the first statementthe "our side seek justice.....his job is to put them on the street where they can strike again" comment. Then the court compounded the error by sanctioning the remark. Mr. Forrest maintains that the first remark warrants reversal of his conviction.
The prosecutor's remark was improper; it comes close to what the Louisiana Supreme Court objected to in State v. Sugar, 408 So.2d 1329, 1331 (La.1982), when the Court remarked that closing argument should not be a "plebiscite on crime." However, such a statement does not require reversal unless this court is convinced that the jury was influenced by the remark and it contributed to the verdict. State v. Jarman, 445 So.2d 1184, 1188 (La.1984). Moreover, the "good sense and fairmindedness of jurors who have heard the evidence" must also be taken into account. Id. In the case sub judice, the issue concerned whether Mr. Forrest took purses from two women and wallets and money from a man. There is no evidence that the jury was affected by the prosecutor's closing speech because it found the defendant not guilty of one of the counts of purse snatching. Thus, the prosecutor's appeal for "justice" and the trial court's "sanction" of the prosecutor's position was not prejudicial enough to have contributed to the verdict. Furthermore, when the defense attorney objected to the statement that the judge would stop anything improper, the trial court commented that these statements were argument and not fact nor evidence.
This assignment is without merit.

CONCLUSION
The trial court erred in failing to conduct an evidentiary hearing on Mr. Forrest's pro se motion to quash. Considering the delays from institution of prosecution to trial, the trial court is ordered to conduct an evidentiary hearing to determine whether the Motion to Quash the indictments under La.C.Cr.P. art 578(2) should be granted. Additionally, the trial court is ordered to appoint new counsel to represent Mr. Forrest at this hearing.
REMANDED.
LOBRANO and ARMSTRONG, JJ., concur.
LOBRANO, Judge, concurring.
Because the trial court did not rule on defendant's motion to quash prior to trial and because the record is incomplete with respect to the reasons for delay, I agree that the trial court should conduct an evidentiary hearing on the issue of defendant's constitutional right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L. Ed.2d 101 (1972).