775 So.2d 565 (2000)
STATE of Louisiana
v.
Larry BRENT.
No. 2000-KA-0072.
Court of Appeal of Louisiana, Fourth Circuit.
November 29, 2000.
*566 Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Louisiana, Attorney for the State of Louisiana/Appellee.
Hollo Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, Attorney for defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG, and Judge CHARLES R. JONES.
JONES, Judge.
Defendant/appellant, Larry Brent, appeals his conviction and sentence for attempted possession of heroin. Following the guilty verdict, the State filed a multiple bill of information and a hearing was subsequently held. While the trial court took the matter under advisement, Brent was then sentenced to two years at hard labor without benefit of probation or suspension of sentence. After a review of the record, we affirm the judgment of the trial court.

FACTS
Detective Donald Knides testified at trial that he and Detective Russell Nelson set *567 up a surveillance of the residence at 2517 and 2519 Perdido Street from May 24, 1995 through June 5, 1995. During that time, the detectives observed numerous people walk down the alleyway by the house and knock on the side of the house. From their surveillance, the detectives believed that narcotics were being sold from the premises. On the last two days of the surveillance, the detectives observed Brent at the residence. The officers subsequently obtained a search warrant on June 4, 1995 and planned to execute the warrant on June 5, 1995.
On June 5, 1995, Detective Knides positioned himself with the officers who were assigned to execute the warrant while Detective Nelson maintained surveillance of the residence. At approximately 11:45 a.m., Detective Nelson observed a white male, later identified as Robert Hidalgo[1], drive up to the residence in a green station wagon. Hidalgo exited his vehicle, walked down the alleyway, and knocked on the side of the house. Hidalgo then walked to the front of the house. As Hidalgo was leaving, Brent and a black female, later identified as Angie Williams, were approaching the house. Hidalgo and Brent had a brief conversation, then Brent and Williams entered the residence while Hidalgo remained outside. Brent returned and engaged in what appeared to be a narcotics transaction with Hidalgo. Brent later went inside the residence and Hidalgo left. Detective Nelson notified Detective Knides and the take down team of the transaction and provided a description of Hidalgo and his vehicle.
Detective Knides stopped Hidalgo after he parked his vehicle in the 500 block of South Galvez Street. Detective Knides observed Hidalgo walk into the alleyway of a residence at 533 South Galvez and fill a prescription bottle with water. The officer detained Hidalgo when he returned to his vehicle. As Hidalgo was opening the driver's side car door, the officer saw two tin foil packets, which he believed contained heroin. Hidalgo was subsequently arrested for possession of heroin.
After arresting Hidalgo, Detective Knides testified he and members of the take down team met Detective Nelson at the Perdido Street residence to execute the search warrant. When the officers entered the residence, Brent and Angie Williams were sitting in the kitchen. A search of the kitchen area revealed twenty-four tin foil packets believed to contain heroin in a film canister, three syringes and a cap containing a liquid residue. Three additional syringes were found in the bedroom. Two hundred twenty-eight dollars were found on Brent's person. The officers also located two automatic pistols and one revolver in the residence.
Edgar Dunn, a criminalist with the New Orleans Police Department Crime Lab, testified that he examined and tested the tin foil packets, syringes and bottle cap found in the residence. Dunn concluded that the packets and bottle cap tested positive for heroin.
Angie Williams, Brent's girlfriend, testified that she took a cab the morning of June 5, 1995, to meet Brent at the residence at 2517 and 2519 Perdido Street. She had previously given Brent part of her SSI money, and had returned to get the money from him. When she arrived, she and Brent walked to the restaurant on the corner and had breakfast. Afterwards, they walked back to the house. They were able to enter the house even though Brent did not have a key. They had just sat down at the kitchen table when the police arrived. Ms. Williams testified that Brent *568 did not live at the residence on Perdido Street, but was just visiting the residence.

ERRORS PATENT
A review of the record for errors patent reveals none.

MOTION TO QUASH PROSECUTION
In his first assignment of error, Brent contends that the trial court failed to rule on his motion to quash the prosecution based upon the failure to commence trial within the time limits of La.C.Cr.P. article 578.
While the motion to quash is not in the record, it appears that Brent filed a pro se motion to quash in his application for supervisory writs to the Fourth Circuit Court of Appeal on December 19, 1997, in writ 97-K-2886. This Court, on February 13, 1998, transferred the motion to the trial court for consideration and ordered the trial court to conduct a contradictory hearing on the defendant's motion. On February 26, 1998, the trial court ordered that a hearing would be held on March 11, 1998. The matter was continued and reset five times. On May 7, 1998, this Court, in writ 98-K-0899, again ordered the trial court to comply with the previous order in 97-K-2886 to conduct a contradictory hearing on the defendant's pro se motion; nevertheless, a contradictory hearing was not held. Brent subsequently went to trial on May 18, 1998. He was acquitted of the charge of distribution of heroin and found guilty of attempted possession of heroin. After the verdict was rendered, Brent did not object to the trial court's failure to conduct a hearing on the motion to quash.
In State v. Woodfox, 291 So.2d 388 (La.1974), the Louisiana Supreme Court held that the failure of the trial court to rule on a motion to quash is an irregularity or error in the proceedings to which a defendant must object. Therefore, a defendant's failure to object to the lack of a hearing on his motion to quash constitutes a waiver of his objection and precludes appellate review. See LSA-C.Cr.P. article 841; Woodfox. However, this Court distinguished Woodfox in State v. Forrest, 97-0027 (La.App. 4 Cir. 10/1/97), 701 So.2d 706, writ denied, 97-2735 (La.2/20/98), 709 So.2d 772. In Forrest, the defendant announced before trial that he had filed a pro se motion to quash. The defendant had also written a letter to the trial court one month prior to trial concerning the disposition of the motion to quash. The trial court did not respond to any of the defendant's requests. In concluding that that the defendant had not waived his right to appellate review by failing to formally object to the failure of the trial court to conduct a hearing, this Court stated:
Mr. Forrest's pre-trial speech and his letter are certainly a lay person's attempt to object to the trial court's failure to rule on his motion to quash. Further, Mr. Forrest complained about his counsel's failure to act on his behalf. This is not the usual case where the defendant appears to acquiesce because he does nothing; here Mr. Forrest raised the issue and was ignored.
State v. Forrest, 97-0027, p.6; 701 So.2d at 709.
In the case at bar, Brent filed two pro se applications for supervisory writs of review with this Court in order to insure that the trial court would consider his motion to quash. This Court granted both writs and ordered the trial court to conduct a hearing on his motion. The last writ, 98-K-0899, rendered on May 7, 1998, ordered the trial court to comply with this Court's previous order in writ 97-K-2886 and conduct a hearing on the defendant's motion to quash. The trial court did not comply with this Court's order, and defendant went to trial on May 18, 1998. In light of this Court's holding in State v. Forrest, Brent's two writ applications for supervisory review must be considered as sufficient to protect his right to argue the matter on appeal. His failure to object at trial does not preclude him from seeking review of this issue on appeal, especially in *569 light of the fact that this Court ordered the trial court to conduct a hearing eleven days before trial was held. The trial court had notice from this Court that Brent had a pending motion to quash which should have been considered before trial.
In his motion to quash, Brent argued that the State failed to try him within the two-year time limitation of La.C.Cr.P. art. 578, which provides in pertinent part: "Except as otherwise provided in this Chapter, no trial shall be commenced in other [non-capital] felony cases after two years from the date of institution of prosecution." La.C.Cr.P. art. 579 provides that the period of limitation set forth in La. C.Cr.P. art. 578 shall be interrupted if "the defendant cannot be tried because of ... any ... cause beyond the control of the state." Under La.C.Cr.P. art. 579(B) "periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists."
As noted in State v. Rome, 93-1221 p.4 (La.1/14/94), 630 So.2d 1284, 1287: "An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute." When a defendant seeks to quash the charges against him due to a violation of the Art. 578 time limitation, the State bears the burden of showing that an interruption as envisioned by Art. 579 occurred. The State is held to a "heavy burden" of showing just and legal cause for the interruption. See Rome; State v. Taylor, 439 So.2d 410 (La.1983); State v. Mattox, 96-1406 and 96-2370 (La. App. 4 Cir. 12/10/97), 704 So.2d 380, writ denied 98-1701 (La.8/28/98), 723 So.2d 419, and 98-2395 (La.9/25/98), 725 So.2d 493.
In addition, La.C.Cr.P. art. 580 provides:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no cause shall the state have less than one year after the ruling to commence the trial.
Motions for hearings or for a continuance by the defendant suspend the running of the periods of limitation until the ruling of the court. State v. Fabacher, 362 So.2d 555, 557 (La.1978); State v. Campbell, 97-0358 (La.App.4 Cir.5/20/99), 715 So.2d 488, 495, writ denied 98-2485 (La.2/12/99), 738 So.2d 564. A motion for a joint continuance also suspends the period of limitation under La.C.Cr.P. art. 580. State v. Rome, supra.
In the case at bar, the indictment was filed on August 17, 1995. Brent pled not guilty at his arraignment on August 22, 1995. At that time, he filed motions to suppress. A hearing on the suppression motions was held on December 11, 1997. The trial court denied his motion to suppress evidence. Between the time of his arraignment and the suppression hearing, Brent sought and obtained five continuances, the last one on August 29, 1997. The State also obtained five continuances, the last one on November 14, 1997. The trial court granted two joint motions for continuance on October 6, 1995 and September 3, 1996. Hidalgo, Brent's co-defendant, also obtained at least three continuances on his own. After the suppression hearing on December 11, 1997, the trial court set the matter for trial on January 20, 1998. From January 20, 1998 to May 18, 1998, the date of trial, the defendants sought and obtained three continuances, the last on May 12, 1998. The State also obtained a continuance on April 13, 1998. The trial court then granted a joint motion for continuance on April 20, 1998.
Under La.C.Cr.P. article 580, Brent's filing of the motion to suppress suspended the time limitation set in article 578. Thus, the State had one year from the disposition of the suppression hearing held on December 11, 1997, to proceed to trial. Thus, at the time he filed his first application for supervisory writs in this Court in *570 December of 1997, Brent's motion was without merit. Additionally, he subsequently sought and obtained continuances on January 20, 1998, March 9, 1998 and May 12, 1998, and a joint continuance was granted on April 20, 1998. Thus, the State proceeded to trial within the one-year limitation of article 580.
Accordingly, this assignment of error is without merit.

INSUFFICIENCY OF EVIDENCE
Brent next contends that the State produced insufficient evidence to support his conviction for attempted possession of heroin.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
LSA-R.S. 40:966(C) makes it unlawful for any person to knowingly or intentionally possess heroin, a controlled dangerous substance classified in Schedule I. To prove a defendant attempted to possess a controlled dangerous drug, the State must prove that the defendant committed an act tending directly toward the accomplishment of his intent, i.e. possession of the drugs. State v. Chambers, 563 So.2d 579 (La.App. 4 Cir.1990). The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support the conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La.App. 4 Cir.1991); see also Cann, supra at 397.
A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion and control. State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4 Cir.1990). A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). Determination of whether a defendant had constructive possession depends on the circumstances of each case. See Cann, supra at 399-400. Among the factors to consider in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are (1) whether the defendant knew that illegal drugs were present in the area; (2) the defendant's relationship to the person in actual possession of the drugs; (3) whether there is evidence of recent drug use, the defendant's proximity to the drugs; and (4) any evidence that the area is frequented by drug users. See *571 State v. Pollard, 93-1960, p. 13 (La.App. 4 Cir. 7/14/94), 640 So.2d 882, 888.
In the case at bar, Detectives Nelson and Knides observed Brent at the residence on Perdido Street on June 4, 1995 and June 5, 1995. These Detectives testified that the activities they observed at the residence caused them to believe that narcotics were being sold from the residence. Detective Nelson testified that he observed Brent and Hidalgo engage in a narcotics transaction on June 5, 1995. Detective Nelson also testified that Hidalgo met Brent outside the residence, and that Brent went inside the residence and returned shortly thereafter with small objects, which he gave to Hidalgo. After Hidalgo left Brent, Brent went back inside the residence.
Detective Knides testified that Hidalgo was stopped and found to have two tin foil packets of heroin in his vehicle. Detectives Knides and Nelson executed the search warrant on the Perdido Street premises after Hidalgo was arrested. When the officers entered the residence, Brent and Ms. Williams were found in the kitchen where officers found twenty-four tin foil packets containing heroin in a film canister, three syringes and a cap containing a liquid residue in the kitchen. Three additional syringes were found in the bedroom. Two hundred twenty-eight dollars were found on Brent, and two automatic pistols and one revolver were confiscated from the residence.
While Ms. Williams stated that Brent was only visiting at the residence, she acknowledged that she and Brent were able to enter the premises without anyone letting them in, and she could not remember whether Brent had a key to the residence. Such testimony is sufficient to sustain Brent's conviction for attempted possession of heroin. The evidence indicates that Brent knew the heroin was on the premises and that he had dominion and control the illegal substances within the residence. This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence of Larry Brent are affirmed.
AFFIRMED.
NOTES
[1] Robert Hidalgo was charged in the same indictment with possession of heroin. After the jury trial on May 18, 1998, Hidalgo was found guilty of attempted possession of heroin. Hidalgo waived all legal delays and was sentences on the same day. The trial court then sentenced Hidalgo to a suspended sentence of two years at hard labor with credit for time served. The trial court then placed Hidalgo on eighteen months active probation with special conditions.