PAUL A. BONIN, Judge.
| following its reversal of our prior disposition of the criminal appeal of Randolph Armstead, the Louisiana Supreme Court remanded his case to us for consideration of his assignments of error, which we had pretermitted. See State v. Armstead, 14-1365 (La.11/21/14); 153 So.3d 998 (on rehearing).
Mr. Armstead was convicted of the charge of felony carnal knowledge of a juvenile, a violation of La. R.S. 14:80 A(l), and sentenced to ten years imprisonment at hard labor. See La. R.S. 14:80 D.[1] Mr. Armstead assigns six errors: first, that the evidence is insufficient to sustain the guilty verdict; second, that the trial judge erred in reversing his initial ruling which quashed the indictment on the grounds that the time limitation for the institution of prosecution had expired; third, that his constitutional right to confront the DNA analysts was violated; fourth, that the trial judge prohibited the introduction of statements by the victim’s mother which showed that the victim had lied; and, fifth and sixth, that it fallowed the trial to proceed without the testimony of the victim and also denied the defendant’s motion for new trial when the victim was available. Notably, none of Mr. Armstead’s assignments relate to his sentence.
We have reviewed Mr. Arm-stead’s first assignment under the well-known Jackson v. Virginia standard and, viewing the facts in the light most favorable to the prosecution, conclude that any rational trier of fact could find that the prosecution proved each and every essential element of the offense of felony carnal knowledge of a juvenile beyond a reasonable doubt. We have reviewed Mr. Arm-stead’s second assignment de novo and conclude that the trial judge was legally correct in finding that the time limitation for instituting the prosecution had not expired. With respect to the third assignment respecting a right to confront the DNA analyst, we find that Mr. Armstead failed to timely object and thus failed to preserve that issue for our review. The remaining assignments we have reviewed under an abuse-of-discretion standard and are unable to discern any abuse of discretion by the trial judge. In addition, as we always do, we have examined the entire record for errors patent and have detected *508 none bearing upon the defendant’s conviction.[2] See La.C.Cr.P. art. 920(2).
| aAccordingly, we affirm Mr. Armstead’s conviction and sentence. We explain our decision in greater detail below.
I
A
On December 10, 2010, the Grand Jury indicted Randolph Armstead for the aggravated rape of a girl who was under the age of seventeen years and, in a second count, for her second degree kidnapping. The Grand Jury alleged that the offenses occurred on November 18, 2001.
On September 25, 2012, the assistant district attorney amended the indictment so that the second degree kidnapping count was dismissed and the charge of felony carnal knowledge of a juvenile was substituted for the charge of aggravated rape.[3] At that point, Mr. Armstead orally urged the trial judge to quash the indictment on the ground that the time period for the institution of prosecution had expired. Despite the absence of a written motion, the trial judge quashed the indietment on the same day that the indictment was amended. See State v. Armstead, 14-0036 (La.App. 4 Cir. 6/4/14); 144 So.3d 66, reversed 14-1365 (La.9/12/14); 147 So.3d 162. The assistant district attorney filed a written motion for appeal, and the trial judge signed the order of appeal.[4] The prosecution, however, |4asked the trial judge to reconsider his ruling. On reconsideration, the trial judge reversed himself and refused to quash the indictment.
On March 26, 2013, Mr. Armstead was tried by a jury, which found him guilty as charged. He later filed a motion for new trial, which was heard on May 3, 2013, and denied. The trial court subsequently sentenced Mr. Armstead to serve ten years at hard labor, with credit for time served. The sentence was to be served concurrently to any other sentence Mr. Armstead was serving. Mr. Armstead, subsequently, sought timely appellate review of his conviction.
B
Detective Clifton Neely testified to having investigated a sexual assault involving *509 a minor victim that occurred on November 18, 2001. The officer was notified that the victim was at University Hospital where a sexual assault examination, which included a vaginal swab for DNA material, was conducted on November 19, 2011. The assault kit was placed in a locked refrigerator and later given to the police to be placed in Central Evidence and Property.
In the meantime, Detective Neely met with the victim and took a statement. The victim had initially told Joan Rooney, her attending nurse, that two boys, whom she named, had threatened and attacked her. The victim, however, told Detective Neely a different version of events. Detective Neely later had the victim take him to the area where she was assaulted. They first passed up the location before the victim later pointed it out to him. Detective Neely also spoke with the pastor of a church, which was located across the street from the site of the incident, |fibut he was unable to provide any information to the detective. Detective Neely testified that while the victim’s description of the assault changed, her description of the assault’s location remained consistent. Detective Neely testified that he was unable to develop a suspect because the victim’s statements to him kept changing. The detective also stated that he spoke with the victim’s mother, and that statements she made to him caused him to suspect that the victim’s allegations of rape were unfounded. The detective administratively closed the case because he found the allegations “unfounded.”
But, because Detective Neely was unable to develop a suspect, the seal on the sexual assault examination materials was never broken or tested at the time of his investigation. It remained sealed and untested in Central Evidence and Property until 2004, when it was sent to ReliaGene, a private DNA laboratory in New Orleans, in connection with a federally funded program intended to clear up the City’s backlog of untested rape examination kits. .
This matter remained a cold case until 2007 when the NOPD’s Detective Francis Jarrott received correspondence from the NOPD’s Criminal Investigation Division stating that there had been a CODIS hit with respect to this case. Specifically, the detective testified that he was part of the cold case unit assigned to investigate cases which received CODIS hits. The Combined DNA Index System, or “CODIS,” is a nationwide, FBI-supported system of DNA databases maintained by national, state and local crime laboratories. Accordingly, Detective Jarrott re-interviewed the victim in November 2007, who stated to him that she knew the j (¡defendant and did not have consensual sex with the defendant.[5] Detective Jarrott also testified that the defendant’s date of birth was March 19, 1980, and the victim’s date of birth was March 27, 1985. He then obtained an arrest warrant for the defendant and a search warrant to take a buccal swab sample from the defendant.
At trial, the prosecution presented witnesses who discussed the process by which fluid samples were collected from the victim, tested, and the DNA analyzed. The prosecution likewise introduced evidence documenting the chain of custody through which the fluid samples and DNA evidence passed on their way to being introduced into evidence at trial. Specifically, the prosecution established that DNA was extracted from both the vaginal swab and a blood sample taken from the victim, and the profiles from each were compared. A report on the findings was provided to the *510 New Orleans Crime Lab and the New Orleans Police Department.
The report was discussed at trial by Angela DeLatte, a DNA analyst with the Louisiana State Police Crime Lab who was qualified as an expert in molecular biology and DNA analysis. Ms. DeLatte identified the DNA report she prepared concerning the two referenced buccal swabs taken from the defendant. She obtained a DNA profile from one of the buccal swabs and compared the profile with the results from the unknown DNA profile obtained from the victim’s 2001 vaginal swab. Ms. DeLatte determined that the defendant could not be excluded as the donor for the 2001 DNA profile. Ms. DeLatte testified that the probability for |7finding the same deduced DNA profile, if the DNA profile came from an unrelated unknown individual other than the defendant, was approximately one in 14.5 quadrillion.
II
In his first assignment of error, Mr. Armstead asserts that the prosecution produced insufficient evidence to support his conviction for felony carnal knowledge of a juvenile. Specifically, Mr. Armstead argues that the following evidence adduced at trial created sufficient reasonable doubt to warrant his acquittal: 1) on the date of the offense, the victim reported to a hospital nurse that her attackers were two boys — Brandon and Ronald — that attended the same middle school that she did; 2) Mr.. Armstead could not have attended middle school with the victim because he is ten years older than the victim; 3) Detective Neely decided to close the case as unfounded based upon information he received from the victim’s mother; 4) the DNA evidence procured from the victim might have degraded because it was not always stored in a freezer; and 5) Relia-Gene received several violations from auditors for improper reporting with respect to its DNA analysis in other unrelated matters. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. See State v. Marcantel, 00-1629 (La.4/3/02); 815 So.2d 50; State v. Shaw, 07-1427 (La.App. 4 Cir. 6/18/08); 987 So.2d 398.
Is-A-
We first consider the essential elements of the offense for which Mr. Armstead has been convicted — felony carnal knowledge of a juvenile. Specifically, the version of Louisiana Revised Statute 14:80 A(l) in effect at the time of the offense provided that the offense of felony carnal knowledge of a juvenile is committed when “[a] person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender.”[6] Notably, “[l]ack *511 of the juvenile’s age shall not be a defense.” La. R.S. 14:80 C. And, importantly, “[ejmission is not necessary; and penetration, however slight, is sufficient to complete the crime.” Ibid. There is jurisprudence which suggests the following as the essential elements of the offense of carnal knowledge of a juvenile: (1) the defendant is nineteen years old or older; (2) the victim is |9twelve years old or older but not yet seventeen years old; (3) the victim was not married to the defendant at the time of the offense, and (4) (consensual) sexual intercourse. See State v. Joseph, 425 So.2d 1261, 1263 (La.1983); State v. Dixon, 471 So.2d 282, 284 (La.App. 4th Cir.1985), and State v. Freeman, 447 So.2d 600, 605 (La.App. 3rd Cir.1984). Consent, however, is not an element of the offense. See State v. Smith, 26,762, p. 1 (La.App. 2 Cir. 1/25/95); 649 So.2d 145, 146. We observe, however, that the marital status of the victim and the accused vis-á-vis one another is an element of the offence. See, e.g., State v. Pitre, 04-1134, pp. 5-10 (La. App. 3 Cir. 02/09/05); 893 So.2d 1009, 1013-1016, and cases cited therein.
B
We turn know to examine the evidence adduced at trial. Specifically, the evidence presented by the prosecution established that at the time of the offense the victim was sixteen years of age while the defendant was twenty-one years of age. The medical records report the young woman as “single,” and there is nothing in the record which contradicts that. Further Mr. Armstead’s DNA was obtained from a semen sample was collected from the young woman’s vagina. Nurse Rooney testified concerning this victim’s rape examination and the procedures used in the collection of blood and semen samples as part of the sexual assault examination, including the vaginal swab.[7] Former Relia-Gene employees testified to the DNA analysis performed on the blood and semen samples obtained during | inthe victim’s sexual assault examination. Ms. DeLatte testified that the DNA samples taken from the 2001 sexual assault examination were compared with the defendant’s DNA sample collected after his arrest in 2007, and that the defendant could not be excluded as the donor of the DNA sample taken from the sexual assault examination. Ms. DeLatte also stated that the probability for finding the same deduced DNA profile, if the DNA profile came from an unrelated unknown individual, was- approximately one in 14.5 quadrillion.
C
The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set forth in Jackson v. Virginia. See generally 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also State v. Mathews, 375 So.2d 1165, *512 1167-1168 (La.1979). This inquiry requires a reviewing court to determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781.
There are several principles that guide our review under this well-known standard. First, we examine all of the evidence considered by the jury at trial. See id. Thus, we do not ignore evidence that was erroneously admitted or could have been excluded at trial, i. e., inadmissible hearsay. See State v. Hearold, 603 So.2d 731, 734 (La.1992).
Second, all of the evidence is viewed in the light most favorable to the prosecution. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; State v. Fields, 12-0674, p. 6 (La.App. 4 Cir. 6/19/13); 120 So.3d 309, 315. We are not limited to the admitted evidence alone, but may also consider all reasonable inferences from that evidence which the fact-finder could have made. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781. As such, when circumstantial evidence forms the basis of a conviction, such evidence must consist of “proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982).
Third, in evaluating a defendant’s challenge to the sufficiency of evidence, we are restricted to those theories actually put forth by the defense at trial. See State v. Juluke, 98-0341, pp. 4-5 (La. 1/8/99); 725 So.2d 1291, 1293 (per curiam). A defendant may not simply develop a new theory on appeal and demonstrate that the evidence was insufficient to negate that new theory. See id.
And, fourth, we are highly deferential to the findings of the trier of fact. See State v. Barthelemy, 09-0391, pp. 24—25 (La.App. 4 Cir. 2/24/10); 32 So.3d 999, 1015. In criminal cases our “appellate jurisdiction extends only to questions of law.” La. Const. art. V, § 10(B). It is “the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781. See also State v. Smith, 11-0664, p. 4 (La.App. 4 Cir. 1/30/13); 108 So.3d 376, 381. The trier of fact may accept as true the testimony of any witness, even a single witness, and find such testimony sufficient to establish each element of an offense beyond a | ^reasonable doubt. See State v. Sanchell, 11-1672, p. 6 (La.App. 4 Cir. 10/31/12); 103 So.3d 677, 680.
Our review will only impinge upon this fact-finding function to the extent necessary to assure compliance with Jackson v. Virginia. See State v. Macon, 06-481, p. 8 (La.6/1/07); 957 So.2d 1280, 1285. “The Due Process Clause of the Fourteenth Amendment, the source of the Jackson [v-. Virginia] standard, does not countenance, much less require, that we re-weigh testimony and witness credibility.” See State v. Gilmore, 10-0059, p. 6 (La.App. 4 Cir. 10/6/10); 50 So.3d 208, 212-213. See also Jackson, 443 U.S. at 319, 99 S.Ct. 2781. We will only tread on a jury’s presumed acceptance of a witness’ testimony when that testimony is implausible or clearly contrary to evidence. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988). See also State v. Marshall, 04-3139, p. 9 (La.11/29/06); 943 So.2d 362, 369 (“Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion.”); State v. Robinson, *513 10-0885, pp. 7-8 (La.App. 4 Cir. 12/21/10); 54 So.3d 1208, 1213.
D
Construing the evidence in the light most favorable to the prosecution, we find that any rational fact-finder could conclude that Mr. Armstead was guilty beyond a reasonable doubt of carnal knowledge of a juvenile. At trial, Mr. Armstead sought to cast doubt upon the prosecution’s case by pointing out inconsistencies in the versions of events related by the victim to nurses and | ^detectives. To the extent Mr. Armstead’s endeavors were successful, we note that the jury was presented with a factual dispute and was free to credit the DNA evidence over the victim’s out of court statements. See Sanchell, 11-1672, p. 6, 103 So.3d at 680.
Mr. Armstead, moreover, does not challenge the scientific conclusions derived from the DNA evidence or its chain of custody, although he attempts to cast doubt on its reliability by suggesting that DNA evidence degrades when not stored in a freezer. Mr. Armstead, however, failed to elicit any testimony or evidence suggesting that the DNA evidence collected from this case’s victim was stored under anything other than ideal conditions. The prosecution, moreover, also elicited testimony from one of the ReliaGene witnesses that degradation of a DNA sample only results in a loss of testable material, not an incorrect genetic profile. Accordingly, Mr. Armstead failed to effectively challenge the scientific conclusion that a sample of his DNA was extracted from the victim’s vagina. Evidence of this defendant’s sperm in this victim’s vagina suffices to establish requisite penetration and thus sexual intercourse. See State v. Freeman, 447 So.2d at 605; see also State v. Barber, 315 So.2d 296, 297 (La.1975) (“Based on chemical tests of sperm he found within the vagina of the victim, [the physician] testified that the victim had recent sexual intercourse with a male.”).
The prosecution, therefore, established the identity of Mr. Armstead by his DNA, that he and the victim engaged in sexual intercourse when he was over nineteen years old and the victim was only sixteen, and that at that time they were |14not married to each other. Thus, we conclude, after construing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found all the essential elements of carnal knowledge of a juvenile were proven beyond a reasonable doubt and, therefore, the evidence is sufficient to sustain Mr. Armstead’s conviction.
Ill
We next address Mr. Armstead’s contention that the trial court erred when it denied his motion to quash his indictment. He argues that under Article 572 of the Code of Criminal Procedure, the District Attorney had only three years from the date on which he was identified by DNA testing as a suspect to institute the prosecution. Mr. Armstead argues that his motion should have been granted because the NOPD was informed of the DNA results in June 2007, but the District Attorney did not institute the prosecution until December 2010. We first turn our attention to the general precepts pertaining to the appellate review of a ruling denying a motion to quash.
A
A motion to quash is “a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the charge.” State v. Carter, 11-0859, p. 3 (La.App. 4 Cir. 3/21/12); 88 So.3d 1181, 1182 (citing State v. Byrd, 96-2302, p. 18 (La.3/13/98); 708 So.2d 401, 411; State v. *514 Rembert, 312 So.2d 282, 284 (La.1975)). See also State v. Clark, 12-1296, p. 3 (La.5/7/13); 117 So.3d 1246, 1249. “All pleas or defenses raised before trial, other than mental incapacity to proceed, |1fior pleas of ‘not guilty’ and of not guilty and not guilty by reason of insanity,’ shall be urged by a motion to quash.” La.C.Cr.P. art. 531.
“All issues, whether of law or fact, that arise on a motion to quash shall be tried by the court without a jury.” La. C.Cr.P. art. 537. The scope of permissible consideration by the trial court on a motion to quash an indictment or bill of information is similar to an exception of no cause of action in a civil suit. See State v. Schmolke, 12-0406, pp. 2-3 (La.App. 4 Cir. 1/16/13); 108 So.3d 296, 298. See also State v. Gerstenberger, 260 La. 145, 255 So.2d 720, 723 (1971). Thus, “[a] judge’s consideration of a motion to quash is confined to questions of law and, as a general rule, does not extend to defenses based upon factual findings.” Schmolke, 12-0406 at p. 2, 108 So.3d at 298. This is because the question raised by a motion to quash is not of the factual guilt or innocence of the offense charged as that is an appropriate determination for the fact-finder at trial. See State v. Perez, 464 So.2d 737, 740 (La.1985). See also Byrd, 96-2302 at p. 18, 708 So.2d at 411; State v. Patterson, 301 So.2d 604, 604 (La.1974). Rather, the trial judge’s range of permissible actions is limited to those matters which do not go to the merits of the charge. See La.C.Cr.P. arts. 532-534. See also Rembert, 312 So.2d at 284.
La.C.Cr.P. article 532(7) provides that a motion to quash may, as in this case, be based on the argument that the “time limitation for the institution of prosecution or for the commencement of trial has expired.” When considering a motion to quash, “the court must accept as true the facts contained in the bill of | ^information and the bills of particulars and decide whether or not a crime has been charged.” Schmolke, 12-0406 at p. 3, 108 So.3d at 298 (quoting State v. Lagarde, 95-1497, p. 2 (La.App. 4 Cir. 4/3/96); 672 So.2d 1102, 1103) (internal quotations omit ted). Evidence may be adduced in a motion to quash and at the subsequent hearing on the matter. See Perez, 464 So.2d at 739. See also Byrd, 96-2302 at p. 18, 708 So.2d at 411. The sole purpose of this evidence, however, must not be to support a defense on the merits. Id., 96-2302 at pp. 18-19, 708 So.2d at 411.
The decision by a trial judge to grant or deny this type of motion to quash is solely a question of law.[8] See Byrd, 96-2302 at p. 18, 708 So.2d at 411. Thus, we review the trial judge’s ruling on this motion to quash under a de novo standard. See State v. Hamdan, 12-1986, p. 6 (La.3/19/13), 112 So.3d 812, 816. See also Schmolke, 12-0406 at p. 4, 108 So.3d at 299. Under this standard of review, we do not defer to any factual findings made by the trial judge as those findings of fact regarding the merits of the defense are unauthorized. See id.
B
The statute which establishes time parameters on the institution of criminal prosecutions for felony carnal knowledge of a juvenile (La. R.S. 14:80) when the *515 victim is under the age of seventeen years provides that the District Attorney must commence prosecution against a defendant within ten years of the date that the victim attains the age of eighteen. See La. C.Cr.P. art. 571.1. If, however, that 117time has expired and the defendant is later identified as a suspect through the use of a DNA profile, then a District Attorney must commence prosecution within three years of the date on which the identity of the suspect is established by DNA testing. See La.C.Cr.P. art. 572 B.
The underlying offense in this matter occurred on November 18, 2001. The victim, who was born on March 27, 1985, did not attain the age of eighteen until March 27, 2008. Under the version of La.C.Cr.P. art. 571.1 in effect at the time of the offense, the District Attorney had until March 27, 2018 to institute prosecution against Mr. Armstead.[9] Under La.C.Cr.P. art. 572(B), the three year period would not apply unless the District Attorney had not instituted prosecution by March 27, 2013. The District Attorney obtained an indictment against Mr. Armstead in December 2010 and amended the indictment on September 25, 2012, to charge him with felony carnal knowledge of a juvenile. Thus, the District Attorney timely instituted prosecution against Mr. Armstead. The trial court correctly denied Mr. Arm-stead’s motion to quash.
IV
In his third assignment of error, Mr. Armstead asserts that his constitutional right to confront his accusers was violated when the trial court allowed the trial to 11sproceed without the testimony of the DNA technicians who performed the tests on the DNA specimens. We observe, however, that Mr. Armstead did not object at trial to the introduction of the ReliaGene report or the lack of testimony from the actual technicians who conducted the tests. The prosecution did present the testimony of Chris Larson, the analyst who supervised and reviewed the testing.
Article 841 of the Louisiana Code of Criminal Procedure provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence” and requires that the party state the grounds for the objection. See State v. Richards, 99-0067, p. 4 (La.9/17/99); 750 So.2d 940, 942. Moreover, a defendant is limited on appeal to those grounds for the objections which he articulates at trial. See State v. Brooks, 98-0693, p. 9 (La.App. 4 Cir. 7/21/99); 758 So.2d 814, 819. There are two purposes behind La.C.Cr.P. art. 841(A)’s contemporaneous objection rule: 1) to put the trial court on notice of the alleged irregularity or error, so that the court can cure the error; and 2) to prevent a party from gambling for a favorable outcome and then appealing on errors that could have been addressed by an objection if the outcome is not as hoped. See State v. Lanclos, 07-0082, p. 6 (La.4/8/08), 980 So.2d 643, 648. Because he failed to object at trial to the *516 absence of the ReliaGene technicians, Mr. Armstead is prevented from raising this issue on appeal.
V
In this Part, we affirm the trial court’s refusal to allow testimony concerning the non-testifying victim’s mother’s statements to a testifying police officer. Mr. 11sArmstead, arguing that the testimony should have been allowed into evidence under an exception to the hearsay rule, sought to have Detective Neely testify that the victim’s mother told police officers that the victim told the mother that she lied about the rape to explain how she contracted a sexually transmitted disease. Mr. Armstead contends that the testimony should have been admitted as a statement against interest. See La. C.E. art. 804 B(3). After reviewing the record of the trial, we conclude that the trial court properly sustained the prosecution’s objections to Mr. Armstead’s questioning.
A
“ ‘Hearsay is a statement, other than the one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801 C. Hearsay testimony is not admissible at trial unless provided for by law. See La. C.E. art. 802. Hearsay evidence is generally excluded “because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.” State v. Legendre, 05-1469, p. 7 (La.App. 4 Cir. 9/27/06); 942 So.2d 45, 51. See also State v. Spell, 399 So.2d 551, 555 (La.1981).
One such exception — the “statement against interest” exception — is codified at La. C.E. art. 804 B(3) and provides, in pertinent part:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
[[Image here]]
| 2q(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed 'it to be true.
La. C.E. art. 804 A further provides, “a declarant is ‘unavailable as a witness’ when the declarant cannot or will not appear in court and testify to the substance of his statement made outside court.” This includes situations in which the declarant is “absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.” La. C.E. art. 804 A(5). A declarant, on the other hand, “is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witnéss from attending or testifying.” Id.
Genuine unavailability of a witness is the jurisprudential requirement to obviate constitutional confrontation problems. See State v. Robinson, 423 So.2d 1053 (La. 1982). The broad definition of “unavailable” found in the Code of Evidence is limited, in part, by the fact that “[a] witness who is within the state is subject to subpoena and generally is not unavailable’ for Article 804 purposes.” Maraist, 19 La. Civ. L. Treatise, Evidence And Proof § 10.6 (2011), citing La. C.C.P. art. 1352, which provides, “A witness, whether a par *517 ty or not, who resides or is employed in this state may be subpoenaed to attend a trial or hearing wherever held in this state.” See also Duncan v. Bartholomew, 11-0855 (La.App. 4 Cir. 3/14/12); 88 So.3d 698, 705. Furthermore, a witness is not unavailable for |21 purposes of the exception to the confrontation requirement unless the authorities have made a diligent and good faith effort to obtain his presence at trial. See Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); State v. Sam, 283 So.2d 81 (La.1973), affirmed, 304 So.2d 659 (La.1974).
We further note that a trial court’s rulings on evidentiary issues will not be disturbed absent a clear abuse of discretion. See State v. Mosby, 595 So.2d 1135, 1138-1139 (La.1992). “A judgment or ruling shall not be reversed by an appellate court because of any error ... which does not affect substantial rights of the accused.” La.C.Cr.P. art. 921. See also State v. Magee, 11-0574, p. 45 (La.9/28/12); 103 So.3d 285, 318.
B
In the present matter, Mr. Armstead sought to have Detective Neely testify about a statement the victim gave to her mother concerning her alleged motives for lying about the sexual encounter. The victim’s mother subsequently repeated the statement to the officer. The mother’s statement to the officer characterizing her daughter’s statement to her was clearly inadmissible as hearsay. While not disagreeing with this observation, Mr. Arm-stead asserts that the testimony is admissible as a statement against interest.
We note as a threshold issue, however, that Mr. Armstead merely asserts that the victim and her mother were unavailable to testify. There is no showing in the record to indicate that he made any effort, much less a diligent and good faith | ^effort, to obtain their presence at trial. Thus, Mr. Armstead has failed to show that he may avail himself of this exception to the hearsay rule.
We additionally observe that the statement is not admissible as a statement against interest because La. C.E. article 804(B)(3) specifically provides that “[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.” Mr. Armstead points to no evidence supporting the trustworthiness of the statement and we have found none in the record. We, accordingly, conclude that the trial court did abuse its discretion in refusing to allow Mr. Armstead to introduce testimony concerning the non-testifying victim’s mother’s statements to a testifying police officer.
VI
In his fifth assignment of error, Mr. Armstead argues that his constitutional right to confront his accuser was violated when the trial court allowed the trial to proceed without the testimony of the victim. After first setting out the law governing Sixth Amendment complaints, we conclude that Mr. Armstead’s rights were not violated.
A
The Sixth Amendment’s Confrontation Clause provides that, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” The United States Supreme Court has held that this bedrock procedural guarantee applies to both federal and state prosecutions. See Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Crawford v. Wash *518 ington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In Crawford, the Supreme Court held that this amendment barred “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.” Such testimonial statements cause the declarant to be a “witness” within the meaning of the Confrontation Clause. Crawford, 541 U.S. at 51, 124 S.Ct. 1354. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause. See Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. See Davis v. Washington, 547 U.S. at 822, 126 S.Ct. 2266.
B
Having examined the record in light of Mr. Armstead’s assertions, we conclude that the victim’s absence from trial does not implicate the Confrontation Clause or Crawford. Simply put, Mr. Armstead’s conviction was not predicated upon any testimony of the victim. The District Attorney, by reducing the charge [^against Mr. Armstead, simply proceeded against him based upon the relative ages of the victim and Mr. Armstead, and scientific evidence it obtained through the DNA analysis of the sexual assault examination materials. Further, Detective Neely stated that the victim did not identify her perpetrators and gave him a vague and inconsistent description of the location of the alleged incident. The prosecution, in fact, introduced no out-of-court statement from the victim accusing Mr. Armstead of any crime. We conclude, accordingly, that Mr. Armstead’s Sixth Amendment rights were not violated by the victim’s absence from trial.
VII
Lastly, we examine Mr. Arm-stead’s assertion that the trial court erred when it denied his motion for new trial. He argues that the trial court should have granted him a new trial on the grounds of newly discovered evidence in light of the victim’s testimony at the hearing on the motion for new trial. Specifically, the victim testified that Mr. Armstead did not rape her and that they did not have sexual intercourse. She, however, could not explain how his sperm found its way into her vagina. The victim further stated that she had been advised by the prosecution that she did not need to appear for the first day of trial because a jury was going to be selected for trial, and she was never informed of the need for her to appear later to testify. The victim also acknowledged, on cross-examination by the prosecution, that while she was served with a subpoena, she never intended to appear and testify at trial. She stated that she did not want to come to the trial and was not willing to testify for the prosecution.
laWe find that the trial court did not abuse its discretion when it denied Mr. Armstead’s motion for new trial.
A
We first set out the law applicable to motions for new trial. A motion for new *519 trial should only be granted upon a showing that an injustice has been brought upon the defendant. See La.C.Cr.P. art. 851. Article 851 provides five grounds or “injustices” on which a trial court, on motion of the defendant, shall grant a new trial, including the one urged here that whenever “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.” La.C.Cr.P. art. 851(3).[10]
A defendant bears the burden of proof when seeking a new trial as a result of his conviction, previously obtained by the prosecution. See State v. Clayton, 427 So.2d 827, 832 (La.1982), on reh’g, citing State v. Coleman, 390 So.2d 865, 870 (La.1980). A determination of guilt or innocence in criminal proceedings is a “decisive and portentous event.” See Herrera, 506 U.S. at 401, 113 S.Ct. 853, quoting Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (internal quotations omitted). Once a defendant has been afforded a fair trial and convicted of the offense for which he 12p,was charged, a criminal defendant is converted from a person presumed innocent to one found guilty beyond a reasonable doubt. See Ross v. Moffitt, 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Herrera, 506 U.S. at 399, 113 S.Ct. 853. As a result of the loss of that presumption, a defendant seeking a new trial based on newly-discovered evidence must demonstrate: 1) that the new evidence was discovered after trial; 2) that failure to discover the evidence before trial was not attributable to the defendant’s lack of diligence; 3) that the evidence is material to the issues at trial; and 4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. See State v. Cavalier, 96-3052, p. 3 (La.10/31/97); 701 So.2d 949, 951 (per curiam). See also State v. Prudholm, 446 So.2d 729, 735 (La.1984).
In ruling on this ground for a motion for new trial, the trial judge’s duty is not to weigh the new evidence as though he were a jury determining guilt or innocence. Id. at 736. See also State v. Jones, 00-1942, p. 7 (La.App. 4 Cir. 7/25/01); 792 So.2d 117, 123. Rather, the trial judge should consider the newly-discovered evidence in light of the totality of the evidence and determine whether the evidence is so material that it would have probably produced a different result than the verdict reached. See Kyles v. Whitley, 514 U.S. 419, 434-435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); Clayton, 427 So.2d at 830-831. “If the evidence supporting the guilty verdict contains significant contradictions and discrepancies, newly discovered evidence of relatively minor importance might be sufficient.” State v. Hammons, 597 So.2d 990, 998 (La.1992), citing State v. Talbot, 408 So.2d 861, 886 (La.1981). But “[t]he merits of such a motion must be viewed with extreme caution in the interest 1 <„oi preserving the finality of judgments.” State v. Smith, 11-0091, p. 32 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 696. “The effect of granting a new trial is to set *520 aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried.” La.C.Cr.P. art. 857.
B
“Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.” La.C.Cr.P. art. 858 (emphasis added). We apply the scope of review set forth in Article 858 in our review of rulings on motions for new trial as well. See State v. Lewis, 97-2854, p. 35 (La.App. 4 Cir. 5/19/99); 736 So.2d 1004, 1024. As such, our review is limited to questions of law, comporting with Article V, Section 10(B) of the Louisiana Constitution, which provides: “In criminal cases [an appellate court’s] jurisdiction extends only to questions of law.” Thus, Article 858, while more particularized, neither expands nor contracts our constitutionally-provided scope of review for rulings on motions for new trials. See La.C.Cr.P. art. 851 cmt. (a).
The Louisiana Supreme Court, in Prudholm, has held that a trial judge’s decision to grant or deny a defendant’s motion for new trial under Article 851(3) is a question of law. 446 So.2d at 735, citing Talbot, 408 So.2d at 885. The question of law presented to the reviewing court is whether the trial judge abused his discretion when making the ruling. See State v. Taylor, 14-0151, p. 13 (La.App. 4 Cir. 6/18/14); 143 So.3d 1248, 1255. We necessarily accord to the trial judge ^“considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion.” Clayton, 427 So.2d at 832. “Louisiana law ... recognizes the unique position of a trial judge to ‘get the feel of the case’ by observing the witnesses first hand as they testify.” State v. Miller, 05-1111, p. 4 (La.3/10/06), 923 So.2d 625, 627. See also Smith, 11-0091, p. 32, 96 So.3d at 697. The trial judge witnesses the entirety of the trial and is unquestionably in the best position to determine the probability of certain evidence’s effect, if introduced at trial, on the verdict. We will not therefore overturn a ruling on a motion for new trial “on review if a reasonable man could differ as to the propriety of the trial court’s action.” Prudholm, 446 So.2d at 735, citing Talbot, 408 So.2d at 885. See also State v. Womack— Grey, 99-0416, p. 3 (La.App. 4 Cir. 2/6/02); 809 So.2d 1166, 1168. When the trial judge has not abused his discretion on an Article 851(3) motion, there is no error of law, and we must uphold his ruling. See Taylor, 14-0151, p. 13, 143 So.3d at 1257.
C
We conclude that the trial court did not abuse its discretion in refusing to grant Mr. Armstead’s motion for new trial. First, Mr. Armstead did not show that the failure to discover the new evidence — the victim’s testimony that she did not have sexual intercourse with Mr. Armstead— was not attributable to his lack of diligence. Mr. Armstead could have spoken with the victim prior to trial, or subpoenaed the victim to testify at trial. Mr. Armstead did not explain, however, |29why he failed to pursue either course of conduct at the motion hearing. Second, the trial court did not err when it denied Mr. Armstead’s motion because he did not establish that the victim’s testimony would probably produce a different verdict in the event of retrial. The victim’s consent, vel non, to having sexual intercourse with Mr. Armstead is irrelevant to the charge of felony carnal knowledge of a juvenile. See *521 La. R.S. 14:80 A(l); Carter, 213 La. at 833, 35 So.2d at 748. .
Likewise, the victim’s testimony that she and Mr. Armstead did not have sexual intercourse is directly contradicted by the results of the DNA testing. And Mr. Armstead has not' suggested any alternative plausible account of how his sperm might have been found in the victim’s vagina other than by sexual intercourse. The trial court found clearly that Mr. Armstead did not meet his burden and it did not abuse its discretion when it denied Mr. Armstead’s motion for new trial. Consequently, we find no error law in the trial court’s denial of Mr. Armstead’s motion for new trial.
DECREE
We affirm the conviction and sentence of Randolph Armstead for the violation of La. R.S. 14:80, felony carnal knowledge of a juvenile.
AFFIRMED

. The statutory references are to La. R.S. 14:80 in effect as of the date of the offense, i.e. November 18, 2001. See n. 6, post, for the full language of the statute as then in effect.

.Our review of the record has revealed one error patent, but only pertinent to sentencing. Specifically, the record shows that the trial judge sentenced Mr. Armstead immediately after it denied his motion for new trial. La. C.Cr.P. art. 873 provides that ‘‘[i]f a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least . twenty-four hours after the motion is overruled." State v. Allen, 94-1895, p. 5 (La.App. 4 Cir. 9/15/95); 661 So.2d 1078, 1083. A defendant, however, may waive the legal delays. In the present case, Mr. Armstead did not specifically waive his right to the legal delay, but neither he nor his attorney objected when the trial judge indicated that he was going to sentence Mr. Armstead. While there appears to be no statements made by the defendant or defense counsel to suggest an implicit waiver of the right to delay, the failure to observe the twenty-four hour delay is harmless error because Mr. Armstead has not challenged his sentence on appeal. Where a defendant does not challenge his sentence on appeal or raise the failure to observe the twenty-four hour delay as error, any error is harmless. See State v. Celestine, 00-2713 (La.App. 4 Cir. 2/13/02); 811 So.2d 44. Because Mr. Armstead has not assigned any error pertinent to his sentence, we conclude that this error patent is harmless and requires no further action by us.

. Pursuant to Article 487 of the Code of Criminal Procedure, the prosecution has complete authority to amend indictments, both as to form and substance, at any time prior to trial. See State v. Reel, 10-1737, p. 10 (La.App. 4 Cir. 10/3/12); 126 So.3d 506, 514.

. The motion was signed by the assistant district attorney and filed in the clerk of court's office on September 25, 2012. The trial judge, likewise, signed the motion on September 25, 2012, and set a return date of November 26, 2012.

. It is unclear whether she meant that she had not had sexual relations with the defendant or that she had not consented to sexual relations with him.

. La. R.S. 14:80 provided at time of the offense:
A. Felony carnal knowledge of a juvenile is committed when:
(1)A person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender: or
(2) A person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than fifteen years of age, when the victim is not the spouse of the offender; or
(3) A person commits a second or subsequent offense of misdemeanor carnal knowledge of a juvenile, or a person who has been convicted one or more times of violating one or more crimes for which the offender is required to *511 register as a sex offender under R.S. 15:542 commits a first offense of misdemeanor carnal knowledge of a juvenile.
B. As used in this Section, "sexual intercourse” means anal, oral, or vaginal sexual intercourse.
C. Lack of knowledge of the juvenile’s age shall not be a defense. Emission is not necessary, and penetration, however slight, is sufficient to complete the crime.
D. Whoever commits the crime of felony carnal knowledge of a juvenile shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.

. In order to obtain a vaginal swab, Nurse Rooney testified that "We insert the speculum, open the vaginal vault, and then use a swab to collect any kind of samples off the face of the cervix and in the vaginal vault.”

. By way of contrast, we apply an abuse-of-discretion standard in our review of certain other types of motions to quash under La. C.Cr.P. arts. 532 and 534. See, e.g., State v. Love, 00-3347, pp. 9-10 (La.5/23/03); 847 So.2d 1198, 1206 (Motion to quash based on Sixth Amendment speedy trial rights and the reinstitution of prosecution); State v. Tran, 12-1219, p. 2 (La.App. 4 Cir. 4/24/13); 115 So.3d 672, 673 n. 3 (Motion to quash under La.C.Cr.P. art. 532(10)).

. The Legislature amended La.C.Cr.P. art. 571.1 in 2005 to change the time period from ten years to thirty years from the date the victim attains the age of eighteen. See Acts 2005, No. 186, Sec. 1. The Second and Fifth Circuit Courts of Appeal have concluded that the extension of the time period for prosecuting the offenses listed in Article 571.1, which occurred after the underlying offenses in those cases, was not an unconstitutional ex post facto law, when the extension came into effect before the prior statute of limitations accrued. See State v. Terry, 47,425, pp. 45-46 (La.App. 2 Cir. 11/21/12); 108 So.3d 126, 152; State v. Anderson, 10-779, p. 10-13 (La.App. 5 Cir. 3/27/12); 91 So.3d 1080, 1086-1088. We need not decide which version of Article 571.1 to apply, as we conclude that the District Attorney timely instituted prosecution under either version of the statute.

. The United States Constitution does not explicitly provide to persons convicted of crimes any procedural mechanism or substantive right to a new trial. See Herrera v. Collins, 506 U.S. 390, 408, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The American colonies, however, imported principles of English common law, which began granting new trials in criminal cases at the end of the 17th century, into their systems of justice. See id. at 408-409, 113 S.Ct. 853. One such historical ground for granting a new trial was newly-discovered evidence. See id. at 408, 113 S.Ct. 853.