MAX N. TOBIAS, JR., Judge.
hOn 22 June 2010, the state filed a bill of information charging the defendant, Eugene C. Brown (“Brown”), with possession •with intent to distribute heroin, a violation of La. R.S. 40:966 A. On 24 June 2010, he pleaded not guilty. On 20 August 2010, a hearing on the motions was held; the trial court found probable cause and denied the motion to suppress the evidence. On 12 January 2011, a trial by jury was held. Brown was found guilty of possession of heroin, a violation of La. R.S. 40:966 C. On 18 February 2011, he filed a motion for a new trial that was denied by the trial court after argument. His motion for post-verdict judgment of acquittal was also denied after argument. A multiple bill hearing was continued a number of times on the state’s motion and a number of times on Brown’s motion. On 2 December 2011, the trial court denied Brown’s motion to quash the multiple bill, and the multiple bill hearing was held. The court found him to be a second felony offender and sentenced him to twelve years, then apparently vacated that original twelve-year sentence, and sentenced him as a- second offender under La. R.S. 15:529.1 to twelve *618 years at hard labor without benefit of probation or suspension of sentence. Brown filed a motion to reconsider sentence, which the trial court denied, and a motion for appeal, which the trial court granted.
12At trial, defense counsel stipulated that the crime laboratory report indicated that the drugs confiscated from Brown’s apartment tested positive for heroin. Detective Jeffrey Keating, who had fourteen years’ experience with New Orleans Police Department (“NOPD”) and eight years working in a narcotics unit, testified that on 12 April 2010 he was a detective in the NOPD First District’s follow-up unit. The detective stated that he executed a warrant that day at the residence at 313 South Tonti-Street, Apartment A, New Orleans. He explained that he had been in charge of an auto burglary, and that investigation led him to the 313 South Tonti address with a search warrant; he also had an arrest warrant for Barry Diggs (“Diggs”). The detective had determined that Diggs lived at that residence, along with his brother, Brown. Detective Keating stated that he, Sergeant Davillier, and Detectives Lonnie Beckham and Shawn Jenkins arrived at the residence. Detective Keating knocked on the door, and Brown opened it. The detective asked him to step outside, and he complied. Detective Keating presented the search warrant for the apartment, and he handcuffed Brown for safety reasons. The detective said that a cursory sweep of the apartment was conducted. He returned to Brown, informed him of the nature of the investigation, and advised him of his Miranda rights. Brown verbally stated that he understood his rights.
Detective Keating stated that the detectives systemically searched the apartment; a digital gram scale was in plain view on an end table in the living room/bedroom (because a mattress was on the floor in the first room). He testified that he opened the closet in that first room and saw numerous pieces of male clothing; he searched the jackets and the shirts. From the pocket of a blue buttoned-up shirt, he retrieved a clear plastic bag that contained five pieces of | ¡¡aluminum foil with a brown powdery substance, which he recognized as heroin. Detective Keating also found suitcases, gym bags, and backpacks in the closet. Documents were found inside those bags, which were located just below the shirts. The detective found mail in Diggs’ name, along with his identification. He also found an AT & T bill in Brown’s name at that address, as well as a letter that was a rent analysis for Apartment A.
Detective Keating indicated that in the first room of the apartment (where the closet was located) a mattress was on the floor; a very narrow hallway and the bathroom were to the left. Further down was a very small kitchen. The detective stated that he had made hundreds of narcotics arrests. He said that heroin was usually packaged individually in pieces of foil, as it was in this ease. When heroin was being sold from a house, usually the seller opens a window to conduct transactions. According to Detective Keating, Detective Davillier recovered from the window sill a little piece of a brown paper towel containing seven individually wrapped pieces of foil with a brown substance believed to be heroin. That window sill was very close to the front door. After the officers seized that evidence, Brown was charged with possession with intent to distribute heroin; the officers re-advised him of his rights, and he verbally said that he understood these rights. Brown refused to tell the officers where his brother was. When asked if the items seized were consistent with personal use, Detective Keating replied: “No ma’am.”
On cross-examination the detective stated that Diggs’ photo identification was an *619 Orleans Parish Prison (“OPP”) inmate badge. He identified an envelope addressed to Diggs at 813 South Tonti Street, Apartment A. He testified that he knocked on the door, and Brown opened it. He asked him to exit the apartment while the detectives searched it pursuant to the search warrant, and Brown ^complied. The detective stated that they were looking for items relating to the auto burglary. When defense counsel asked if he had seen Brown involved in the sale of drugs, he answered negatively. The detective admitted that Brown was handcuffed before the detectives went through the apartment to check for other occupants, and he remained in handcuffs after no one else was found. Detective Keating said that one blue shirt out of many items in the closet had the foils of heroin, and he had not seen Brown wearing that shirt. The detective admitted that Brown had no heroin on his person and no weapon. The detective said that foils of heroin in a brown paper napkin or towel were sitting on a windowsill in the first room (living room). He admitted that Diggs was never charged with possession with intent to distribute heroin.
The detective read the list of items seized: (1) two picture identifications bearing the name of Diggs on a chain; (2) one OPP inmate identification card bearing the name of Diggs; (3) one letter addressed to Brown at 313 South Tonti Street, Apartment A; (4) one envelope addressed to Diggs at 313 South Tonti Street, Apartment A; (5) one white envelope containing a letter addressed to Brown; (6) five pieces of aluminum foil containing a brown substance inside clear plastic; and (7) seven pieces of aluminum foil containing brown powdery substance inside a brown paper towel. The evidence sheet indicated that no owner was associated with two items, the five pieces of foil and the seven pieces of foil. Counsel argued that if no owner was listed, the state cannot prove that Brown possessed the heroin.
On redirect-exammation when the detective was asked if he no longer investigated narcotics cases, he replied: “That’s correct.” Detective Keating stated that this investigation was not a narcotics investigation; the search warrant related Rto an auto burglary in which Diggs was a suspect. The detective said that even in a narcotics investigation, an officer is not allowed to name an owner; “the accused” is used.
Sergeant Cyril Davillier testified that he had been an NOPD officer for 21 years, most of that time as an investigator. The sergeant stated that on 21 April 2010 he assisted in the execution of a search warrant at 313 South Tonti, Apartment A, which was part of a project. A detective knocked on the door, and Brown opened the door and was handcuffed for safety reasons. Several detectives searched the very small apartment. After Detective Keating found the foils of heroin, he looked toward the window, where transactions often occur, and he spotted a brown paper towel containing foils of heroin on the window sill near the digital scale on the end table. He said that for the past two years he had worked in plain clothes in housing developments doing only narcotics work. He said that he made four or five arrests a day and worked five days a week. Sergeant Davillier testified that heroin is typically packaged in aluminum foil for sale and heroin that is sold from a residence usually is sold through a window.
On cross-examination Sergeant Davillier testified that he did not see Brown selling heroin from the window sill. He did see the shirt and the foils that Detective Keat-ing had found in the pocket of a shirt in the closet. He spotted the foils of heroin in the paper towel on the window sill and that one was not required to open the *620 paper towel in order to see the foils. He did know that Brown shared the apartment with Diggs.[1]
IfiAt the 2 December 2011 sentencing for possession of heroin, the trial court imposed a sentence of twelve years at hard labor; however, La. R.S. 40:966 C provides a penalty for possession of heroin of not less than four or more than ten years. Technically that sentence was illegal. However, immediately thereafter the court noted that it had found Brown to be a second offender and re-imposed the twelve years sentence under La. R.S. 15:529.1 without benefit of probation or suspension of sentence. That sentence was legal.

ASSIGNMENT OF ERROR NUMBER 1

Brown argues that the evidence was insufficient to prove beyond a reasonable doubt that he possessed heroin. He contends that Detective Keating found approximately 20 shirts in the only closet, and he could not say definitively whether the blue-colored shirt (with a pocket where he found a clear plastic bag containing five aluminum foils of a brown powdery substance) belonged to Brown or to his brother/roommate, Diggs. Envelopes addressed to Brown and Diggs were found in the apartment. The detective could not say who put the piece of brown napkin containing seven more individually wrapped foils on the window sill just inside the front door.
The state argues that Brown had constructive possession of the heroin because it was located in the bedroom of his small one-bedroom apartment, and thus the heroin was under his dominion and control. Additional heroin was on a window sill right inside the front door, and a digital gram scale, which is used by 17drug traffickers, was located in the living room. The fact that documents indicated that Brown shared the apartment with his brother did not defeat his constructive possession of the heroin found there. The state contends that Brown had guilty knowledge of the heroin because he was aware of the heroin in the apartment— Brown had access to the area where the heroin was found (as well as the scale). The state argues that there was evidence that the area was frequented by drug users.
La. R.S. 40:966 C provides:
C. Possession. It is unlawful for any person knowingly or intentionally to pos-sesg a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner or as provided in R.S. 40:978 [prescriptions], while acting in the course of his professional practice, or except as otherwise authorized by this Part.... [Emphasis in original.] [1-5] In State v. Williams, 03-0682
(La.App. 4 Cir. 7/16/03), 853 So.2d 49, we set out the standard for reviewing an insufficiency of the evidence claim relating to a conviction for attempted ■ possession of heroin:
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, *621 viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 44B U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather |8is an eviden-tiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
LSA-R.S. 40:966(C) makes it unlawful for any person to knowingly or intentionally possess heroin, a controlled dangerous substance classified in Schedule I.... The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support the conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La.App. 4 Cir.1991); see also Cann, supra at 397.
Williams, pp. 2-3, 853 So.2d at 51-52, quoting State v. Brent, 00-0072, pp. 8-9 (La.App. 4 Cir. 11/29/00), 775 So.2d 565, 570. See also State v. Ramos, 08-0860 (La.App. 4 Cir. 2/11/09), 5 So.3d 935. The trier of fact determines the weight to be given the evidence presented at trial. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
The mere presence of the defendant in the area where the drugs are found, or the mere fact that the defendant knows the person in actual possession is insufficient to prove constructive possession. State v. Trahan, supra [425 So.2d 1222 (La.1983) ]; State v. Johnson, 404 So.2d 239 (La.1981), cert. den. Kelly v. Louisiana, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). However, a person found in the area of the contraband may be considered in constructive possession if the illegal substance is subject to his dominion and control, State v. Trahan, supra; State v. Johnson, supra; State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); or if he is in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control the drug. Guilty knowledge is the essential element. The determination of whether there is possession sufficient to convict depends on the 19facts peculiar to each case. State v. Trahan, supra, citing State v. Cann, 319 So.2d 396 (La.1975).
Several factors to be considered in determining whether a defendant exercised “dominion and control” over the narcotics to constitute constructive possession are as follows:
“... a defendant’s knowledge that illegal drugs are in the area; the defendant’s relationship with the person found to be in actual possession; the *622 defendant’s access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant’s physical proximity to the drugs; and any evidence that the particular area was frequented by the drug users.” State v. Tasker, 448 So.2d 1311, 1314 (La.App. 1st Cir. 1984), writ den. 450 So.2d 644 (La. 1984).
State v. Chambers, 563 So.2d 579, 581 (La.App. 4th Cir.1990). See also State ex rel. T.E., 00-1810 (La.App. 4 Cir. 4/11/01), 787 So.2d 414.
In State v. Stewart, 11-1216, unpub., p. 7 (La.App. 4 Cir. 11/7/12), 2012 WL 6619272, this court discussed two prior cases:
State v. Harris, 597 So.2d 1105 (La. App. 2 Cir.1992), is also relevant. In Harris, police entered a house where the defendant was seated on a sofa with another subject. Police recovered a matchbox containing cocaine behind the couch. Paraphernalia was located in another room. It was not established that the defendant lived at the house. The district court convicted the defendant of attempted possession of cocaine. The Second Circuit reversed the conviction, finding that it was possible for either of the two parties on the couch to have dropped the drugs at the time of the arrest.
In State v. Cann, 319 So.2d 396 (La. 1975), when a search warrant was executed, the defendant was found in a bedroom behind locked doors with a female person. No contraband was found on him or in the bedroom. Marijuana was found in the kitchen in plain view. The district court convicted the defendant of possession of a controlled dangerous substance. Because the apartment belonged to someone else, and other people were found | min the apartment, the Supreme Court found that the evidence was not sufficient to uphold a finding that the defendant had constructive possession of the drugs. In finding that the defendant neither shared possession, dominion, nor control over the marijuana in the house, the court noted that there was no evidence that the defendant knew or had reason to know that the marijuana was in the kitchen, that he lived in the apartment, or that he had been there on other occasions.
In Stewart the defendant, who was on parole, told his parole officer that he was living in the one-bedroom apartment with his girlfriend. When his parole officer stopped by unannounced, he smelled burned marijuana and saw green vegetable matter on the table in the front room, along with some pills and syringes. The defendant admitted to rolling a blunt, which he pulled out from under a sofa cushion. In the bedroom the parole officer opened a jewelry box and found six foils of what he believed to be heroin. The parole officer moved the defendant outside, arrested him, and handcuffed him. Then the defendant ran into the residence. A few hours later the parole officer, along with back-up officers, entered the residence, but it was empty, and the jewelry box was gone. An arrest warrant was issued for the defendant. This court noted that the defendant’s female roommate testified to reasons for having the syringes and the pills, but concluded that the jurors apparently did not believe that testimony. The parole officer found the defendant in the front room, where he was smoking a blunt; there was very recent drug use, and syringes and pills were on the table in that room. The jewelry box that contained the foils of heroin was in the bedroom where the defendant slept, and it disappeared along with the defendant when he fled the residence before the parole officer re *623 turned. His conviction for possession of heroin was affirmed. Id.
InHere, Brown was inside Apartment A at 313 South Tonti Street when the NOPD detectives, who had a warrant to search that apartment, knocked on the front door. The detectives also had an arrest warrant for Brown’s brother, Diggs, who allegedly committed an auto burglary. The apartment was a very small one-bedroom apartment; a mattress was on the floor in the first room, and the only closet was in that room. Brown was standing in that front room when he opened the door. A piece of a brown paper towel containing seven foils of heroin was on the window sill in that room, and a digital gram scale used by drug traffickers was on an end table. In the pocket of a blue buttoned-up shirt in the only closet in that front room, a clear plastic bag with five pieces of aluminum foil containing heroin was found. In the suitcases and bags underneath the shirts in the closet, envelopes addressed to Brown and Diggs, at that address, were found. One letter to Brown was a rent analysis for apartment A.
Although Brown did not have heroin on his person, we find that a reasonable and rational person could conclude that he was in constructive possession of heroin in the foils inside the apartment. He shared the apartment with his brother, but he clearly had access to the area where the heroin was found. Brown was standing in the front room where the digital scale was visible, along with a piece of brown paper towel containing seven foils containing heroin on the window sill (ready for sale out the window). He was standing very close to that window sill when he opened the front door. He also had access to the closet where his shirts were hanging along with those of his brother because there was only one closet.
A reasonable and rational factfinder could conclude that Brown had dominion and control over the heroin found in the apartment if not in joint possession of it. Viewing the evidence in the light most favorable to the | ^prosecution, any rational trier of fact could have found the appellant guilty of possession of heroin beyond a reasonable doubt. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 2

Brown also argues that the trial court imposed a constitutionally excessive sentence. He contends that the court cited nothing besides the facts of this case as an aggravating factor and failed to consider any mitigating factors. He claims that he has two non-violent convictions and argues that the twelve-year sentence is nothing more than the purposeless and needless imposition of pain and suffering.
Contrariwise, the state argues that the twelve-year sentence was proportionate to the crime of possessing heroin in one’s residence. The sentence was well below the statutory maximum of 20 years and not excessive in light of the quantity of heroin in the apartment and Brown’s prior felony conviction. The court in its own words expressed its concern that a lesser sentence would deprecate the seriousness of the possession of heroin in a city where violence is out of control because of the drug culture.
La. R.S. 40:966 C(l) (unchanged from 2010 through the present) provides:
Any person who violates this Subsection with respect to:
(1) A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk), shall be imprisoned at hard labor for not less than four years nor more than ten years and may, in addition, be required *624 to pay a fíne of not more than five thousand dollars....
According to Schedule 1(B) of La. R.S. 40:964, heroin is a narcotic (an opiate derivative). Therefore, the sentence for possession of heroin is not less than four years and not more than ten years. The trial court found Brown to be a second | isfelony offender; the predicate offense was theft of a computer valued over $500.00 (guilty plea on 6 April 2000-in Orleans Parish case number 412-087).
La. 15:529.1 A(l)[2] provides:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction....
The sentencing range for a second offender was not less, than five years and not more than 20 years.
In State v. Lomax, 11-0591, pp. 9-10 (La.App. 4 Cir. 11/28/11), 81 So.3d 788, 794, this court set out the pertinent law relating to an excessive sentence argument:
In State v. Landry, 03-1671, pp. 7-9 (La.App. 4 Cir.'3/31/04), 871 So.2d 1235, 1239-1240, this Court set forth the standard for reviewing an excessive sentence claim:
La. Const, art. I, § 20 explicitly prohibits] excessive sentences. State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Francis, 96-2389, pp. 6-7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, supra. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain 114and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 676. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 10, 656 So.2d at 979.
In reviewing a claim of excessive sentence, an appellate court generally must determine whether the trial judge adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense charged. State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184,185.
*625 However,' in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 818, 819 this Court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
Lomax, pp. 9-10, 81 So.3d at 794.
We can locate no jurisprudence directly on point as to the sentencing issue. In State v. Jones, 11-0649 (La.App. 4 Cir. 10/19/11), 76 So.3d 608, writ denied, 11-2545 (La.3/30/12), 85 So.3d 116, the defendant, who was convicted of | ^possession of heroin, but had two other pending felony charges, was sentenced to seven years. After being adjudicated a third offender (only the minimum sentence is slightly higher), he was sentenced to twelve years at hard labor under La. R.S. 15:529.1, but after his counsel filed a second motion to reconsider sentence and the defendant used profanity as he walked past the bench, the court sentenced the defendant to the maximum of 20 years; this court vacated the sentence and remanded the matter for further proceedings.
In State v. Thompson, 02-0333, p. 10 (La.4/9/03), 842 So.2d 330, 338, the defendant was originally convicted of two counts of simple possession of heroin. On appeal we reversed count one, and the Supreme Court reversed. The defendant argued to the Supreme Court that, if that court reinstated his conviction and sentence as to count one, it should vacate the trial court’s original sentence of 20 years, the maximum penalty for a second offender, and remand for imposition of a more equitable penalty. The Court noted that the sentencing court particularly considered the defendant’s previous 23 felony and six misdemeanor arrests, in addition to an earlier conviction for possession of cocaine,- and did not find that the sentencing court abused its discretion. Id., p. 10, 842 So.2d at 338.
In State v. Toney, 99-1574 (La.App. 4 Cir. 11/8/2000), 796 So.2d 1, the defendant was convicted of possession of heroin and sentenced as a second offender to ten years at hard labor without benefit of probation or suspension of sentence. This court pointed out that the trial court had noted the defendant’s two other charges arising from the same incident (possession of a firearm by a convicted felon in and possession of cocaine), and the predicate offense in the multiple bill was an earlier conviction for possession of heroin. Additionally, the heroin was discovered when he was being arrested for another felony according to | ^testimony at trial. We,concluded that the trial court did not impose an unconstitutionally excessive sentence. Id.
At the multiple bill/sentencing hearing, the trial court stated:
Mr. Brown, I had the' opportunity to preside over your trial on January 12th of 2011. I heard the facts and circumstances, as did the Jury, as to the cause of your arrest and the subsequent charging of possession with intent to distribute heroin. The Jury came back with a lesser verdict of simple possession of heroin.
Based on my review of my notes from the trial and based on the testimony that was admissible during the course of trial, I have thought at length as to what sentence I would impose upon you, Mr. *626 Brown. I don’t feel that your actions rise to the level to give you the maximum sentence which you would be facing, which is 20 years in the custody of the department of corrections; however, I also don’t find that your actions would give you the benefit of the minimum sentence either. The drug problem in the city , is such that violence has spiraled out of control as a result of the drug culture that we have in the city.
Based on the testimony that I have heard, I’m sentencing you at this time to serve 12 years in the custody of the Department of Corrections.[3]
Now having found you to be a multiple offender with a prior felony conviction, I’m making that sentence under the original case number 497-777 and reimposing the same sentence of 12 years in the custody of the Department of Corrections, pursuant to 15:529.1 as a multiple offender. That sentence will be served without benefit of probation or suspension of sentence. I do believe you are eligible for parole. [Footnote inserted.]
The trial court noted that it had heard the trial testimony and knew the facts and circumstances of the case. The court indicated that it had reviewed its notes taken during trial and had spent considerable time deciding the sentence to be |17imposed. The court thought that Brown’s actions did not warrant the maximum sentence of 20 years as a second offender, but it considered that he should not be given the benefit of the minimum sentence, which would have been five years. It implicitly appears that the trial court considered the sentencing guidelines of La.C.Cr.P. art. 894.1 before deciding to impose the twelve-year sentence. Moreover, the sentence is not excessive when compared to somewhat similar cases. See Thompson, supra; Jones, supra; Toney, supra. This assignment has no merit.
Wé affirm Eugene C. Brown’s conviction and sentence.
AFFIRMED.

. Prior to closing arguments the jurors left the courtroom for ten minutes during which time the parties discussed the special jury instruction requested by Brown. Counsel argued that the jurors should be instructed that a person’s mere presence where drugs were located does not necessarily mean that the person is in actual possession or in constructive possession. Counsel stated that the fact that a person is a resident of the premises where there is contraband does not equate to constructive possession. The court noted that its jury instructions contained a legal definition of constructive possession, and those instructions would be read to the jury.

. Prior to the 2010 amendments this section was La. R.S. 15:529.1 A(l)(a). The language has remained the same.

. The trial court’s error in originally sentencing Brown to twelve years when the maximum sentence for possession of heroin under La. R.S. 40:966 C was ten years (before being adjudicated a second offender) was discussed above.