PAUL A. BONIN, Judge.
_JjTwo shooters fired a total of twenty-six shots at Ernest Augustine in an attempt to kill him. Mr. Augustine escaped with one shot to his wrist. -The shooters, who were described by two witnesses, fled down the block to their getaway vehicle, a black Pontiac. Later that evening, patrolling officers, unaware of the prior shooting incident, arrested the defendant, Darrius Clements, driving a black Pontiac, with Paul Coleman in the passenger seat. Found in the car were two guns, which were later matched to the casings at the scene of the crime, and a bag of heroin.
The prosecution charged Mr. Clements with one count of attempted second degree murder; two counts of felon in | ¡^possession of a firearm; and one count of possession of heroin. The jury returned a verdict of guilty as charged as to all counts except for one count of possession of a firearm by a felon. Mr. Clements admitted his status as a second felony offender and the trial judge imposed an enhanced sentence of 50 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; eight years imprisonment for possession of heroin; and fifteen years imprisonment for felon in possession of a firearm. Mr. Clements now appeals, claiming the evidence was insufficient to sustain his three convictions.[1]
We have examined the sufficiency of the evidence under the well-known Jackson v. Virginia standard and conclude that the evidence in this case was sufficient to establish the essential elements of the offenses for which Mr. Clements was convicted. We thus affirm his convictions and resulting sentences.[2]
We explain our decision in greater detail below.
*715 I
In this Part, we begin with a review of the testimony adduced at trial in this case.
Ernest Augustine, the victim, testified that he was sitting in his car in front of 1205 Touro Street in the late morning hours of November 12, 2013, when he heard gunshots. He ran out of the car and through a neighbor’s house into the backyard to hide under the house. Despite hearing several gunshots, he was only shot once in the wrist.
Daniel Bell testified that on the day of the shooting he was performing carpentry work inside a house at 1209 Touro Street when he heard gunshots. Before running to hide in the backyard, Mr. Bell looked out one of the open front Rdoors and caught a brief glimpse of a man holding a gun. He identified the shooter as a slender African-American male with either long braids or dreadlocks. He also testified to seeing a second man in a hat walking away from the scene after the shooting ceased, although he admitted he did not see the second man with a gun.
Kresta Carter testified that she lives at 1112 Touro Street and that she observed two men park in front of her house in a black Pontiac prior to the shooting. She identified the driver of the Pontiac as a man with shoulder-length braids or dreadlocks and the passenger as wearing dark clothes and a hat. Ms. Carter stated that the man in the hat repeatedly got in and out of the car and was talking loudly to the driver; this went on for about forty-five minutes to an hour. She then observed them exit the car towards the 1200 block. She specifically noted that she saw . the man with braids or dreadlocks walk into the middle of the street and pull out a gun. Immediately- afterwards-, she- heard the gunshots and called 911.
Sergeant Jennifer Dupree testified that she and her partner, Officer Damien Gaines, arrested Mr. Clements and Mr. Coleman in a black Pontiac on the evening of November 12,2013, the same day as the shooting.[3] Sgt. Dupree encountered Mr. Clements on the’driver’s side-and Officer Gaines spoke with the passenger, Paul Coleman. Because Mr. Clements stated he did not have a driver’s license,- Sgt. Dupree asked -him to step out of the vehicle. As he exited, Sgt. Dupree testified she saw Mr. Clements drop a bag of what later turned out. to be heroin, |4from his left hand-onto the' ground. We .note that this, portion of her testimony is. disputed by Mr. Coleman and Mr. Clements,, who both testified at trial.
Sgt. Dupree asked Officer Gaines to collect the bag while she walked Mr. Clements to a second police vehicle which had recently arrived, As Officer Gaines bent to pick up the drugs, he noticed a firearm in plain view wedged in between the floorboard and center console. Sgt. Dupree, after observing Mr. Coleman nervously and repeatedly looking into the back seat of the car, then discovered a second firearm sticking out of a back seat cushion. The officers placed both men under arrest after learning that Mr. Clements had a prior conviction and that one of the guns was stolen. The officers testified they were unaware of the shooting earlier that day. They both identified Mr. Clements in court, and Sgt. Dupree noted that the defendant had longer dreadlocks at the time of his arrest.
As part of the attempted murder investigation, a surveillance video from a nearby residence was obtained and released to the *716 media.- Investigators thereafter received an anonymous tip from Crimestoppers, identifying the shooters as Paul Coleman and Darrins Clements. Upon further investigation,. Detective Rayell Johnson discovered that ,the two men identified by the tipster had been arrested the same day as the shooting and that their booking photographs matched descriptions given by the witnesses.-■, He also ascertained that, they were arrested' with two 9 mm handguns and were driving a black Pontiac, which matched a witness description. As part of his investigation, Det. Johnson ordered ballistics testing to compare the casings found at the scene with the two 9 mm guns found in the Pontiac; all' the | ¿casings were a match- to both guns. Det. Johnson identified Mr. Clements' in court and noted that he was arrested with long dreadlocks and had subsequently cut his hair.
Mr. Clements testified in his own defense. He denied any involvement in the shooting, denied any knowledge of the guns in the car, and denied knowing Earnest Augustine. Mr. Clements did admit that he picked up Mr. Coleman on the day of the shooting but testified that it was not the same car in which he was -later arrested. He did admit he was arrested in a black Pontiac, but claimed that it was a car that someone had givén him to fix, and that he was on his way to fix the headlight when he was stopped by the officers. He also denied dropping the bag of heroin and denied any knowledge that there was heroin in the car. " '
Mr. Clements’, testimony was corroborated only by Mr. Coleman, who, notably, had previously pled guilty to the attempted murder of Ernest Augustine.[4] Mr. Coleman testified that he acted alone, attempting to shoot the victim with two guns, and fled the scene in a black Pontiac, which he admitted was the same Pontiac he was later arrested in. He testified that there was no second shooter, but later admitted that there was another person who drove the Pontiac from the scene, though he claimed it was not the defendant, Mr. Coleman further claimed that he and he alone possessed the heroin, and that Mr,, Clements had not dropped it, but | gather he (Mr. Coleman) had thrown it to the ground from his position in the passenger seat. He denied that he or Mr. Clements owned the Pontiac.
Ryan Brewer testified that he was a previous cellmate of Mr. Coleman’s and that Mr. Coleman had told him that both he (Mr. Coleman) and Mr. Clements had tried to kill Mr. Augustine. Mr. Brewer admitted contacting the assistant district attorney in the case to offer this information in exchange for a reduction in charges. Mr. Coleman took the stand a second time and denied ever telling Mr. Brewer that Mr. Clements was involved in the shooting.
II
In this Part, we address Mr. Clements’ sole claim of the insufficiency of the evidence.
A
The standard of review for sufficiency of evidence applicable to criminal convictions is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The inquiry requires a reviewing court to determine “whether, after viewing' the evidence in the light most favorable to the prosecution, any ra *717 tional trier of fact' could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319. See also State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (“If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally.”).
1/There are several key principles to a sufficiency review. First, an appellate court considers all the evidence in the record, despite whether evidence may have been erroneously admitted, such as,' for example, inadmissible hearsay. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; State v. Hearold, 603 So.2d 731, 734 (La.1992).
 Second, all of the evidence is viewed in the light most favorable to the prosecution. See State v. Hamdan, 13-0113, p. 9 (La.App. 4 Cir. 12/11/13), 131 So.3d 197, 203. Thus, we may consider all reasonable inferences from that evidence which the fact-finder could have made. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781. Relatedly, when circumstantial evidence forms the basis of the conviction, such evidence must consist of “proof of collateral. facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elemesnts must be proven such that every reasonable hypothesis of innocence is excluded, See La. R.S. 15:438. .
Third, in evaluating a defendant’s challenge to the sufficiency of evidence, we are restricted to those theories actually put forth by the. defense at trial. See State v. Juluke, 98-0341, pp. 4-5 (La.App. 4 Cir. 1/8/99), 725 So.2d 1291, 1293 (per curiam). A defendant may not, therefore, develop a new theory on appeal and demonstrate that'thé circumstantial evidence was insufficient to negate the new theory. See id,
And, fourth, we are highly deferential to the findings of the trier of fact. See State v. Armstead, 14-0036, p. 11 (La. App. 4 Cir. 1/28/15), 159 So.3d 502, 512. [ «Thus, the jury may accept as true the testimopy of any witness, even a single witness, and find such testimony sufficient to establish each element of an offense beyond a reasonable doubt. See State v. Sanchell, 11-1672, p. 6 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, 680. Our review will only impinge on' this fact-finding function to the extent necessary to assure compliance with 'Jackson ⅛, Virginia. See State v. Macon, 06-481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285. Thus, we will only tread on a jury’s presumed acceptance of a witness’s testimony when that testimony is implausible or clearly contrary to the evidence. See Mussall, 523 So.2d at 1311; see also Armstead, 14-0036, p. 12, 159 So.3d at 512.
B
Second degree murder is “the killing of a human being ... [w]hen the offender has a> specific intent to kill or to inflict great bodily harm.” La. R.S. 14:30.1. An: attempt is defined, in relevant part, aS:
A. Any person who, having a specific intent to commit a crime, doés or omits an act-for. the purpose, of and- tending directly toward the accomplishing of his object is guilty of an attempt to commit .the offense intended; and. it shall be 'immaterial whether, under-the circumstances, he-would have actually accomplished his .purpose.
B. (1) Mere preparation to- commit a crime shall not be sufficient to constitute an attempt; .but lying in wait with a dangerous weapon with the intent to commit a crime; or searching for the *718 intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
La. R.S. 14:27 A and B(l). Thus, although the completed crime of second degree murder requires the specific intent to kill or inflict great bodily harm, a conviction for attempted second degree murder can only be obtained by showing that the defendant had the specific intent to kill and committed an act tending to | accomplish that purpose. See State v. Bishop, 01-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. See id.; see also La. R.S. 14:10(1).
 To prove a violation of La. R.S. 14:95.1, the prosecution must show that the defendant was in possession of a firearm and is a convicted felon. The element of possession is satisfied by establishing that the defendant had either actual or constructive possession. See State v. Major, 08-0861, p. 6 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 720. Constructive possession is sufficient to establish possession when the firearm is subject to the defendant’s dominion and control, see State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 999, even if the constructive possession is only temporary and even if the control is shared. See id. at 1000 (citations omitted).
■ To sustain a conviction under La. R.S. 40:966 C, the prosecution must prove that the defendant knowingly or intentionally possessed heroin. Actual possession is not required; constructive possession is sufficient to support the conviction. See State v. Brown, 12-0587, p. 8 (La.App. 4 Cir. 2/27/13), 157 So.3d 616, 621 (citing State v. Williams, 03-0682, pp. 2-3 (La.App. 4 Cir. 7/16/03), 853 So.2d 49, 51-52). Similar to a conviction for possession of a firearm by a convicted felon, the mere presence of a defendant in the area where the illegal item was found is not sufficient to prove constructive possession. See id.
IiqC
Considering the foregoing, and construing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could conclude that Mr. Clements was guilty beyond a reasonable doubt of attempted second degree murder, possession of a firearm by a felon, and possession of heroin.
Mr. Clements’ primary argument on appeal is that the prosecution did not negate every reasonable hypothesis of innocence, in light of the circumstantial evidence and Mr. Coleman’s testimony, wherein he claimed full responsibility for the attempted murder, guns, and drugs. He does not dispute the shooting occurred, he just maintains that the prosecution failed to prove his involvement.
In cases where the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the prosecution must negate any reasonable probability of misidentification. See State v. Neal, 00-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658 (citing cases). Here, two witnesses identified two different shooters, one specifically with longer dreadlocks. Both witnesses attested to seeing the shooter with dreadlocks holding a gun. At the time of arrest, Mr. Clements had dreadlocks, matching the two witness descriptions. One of the witnesses observed both men before and after the shooting in a black Pontiac. Mr. Clements and Mr. Coleman were arrested mere hours later in a black Pontiac. Although the defendant argues that the prosecution failed to prove that the Pontiac he was driving was the same as the one used in the shooting, Mr. Coleman notably Intestified that he fled the scene in the *719 same car he was arrested in.[5] The jury evidently did not believe Mr. Coleman’s testimony that Mr. Clements was not the driver of the getaway car. Likewise, the jury did not credit the defendant’s testimony in which he claimed that he and Mr. Coleman had driven around in two different cars that day. Mr. Clements did not attempt to explain the discrepancies between his and Mr. Coleman’s testimonies. Moreover, the two guns found in the car were matched to all the shell casings found at the scene. We find that ample circumstantial evidence exists of Mr. Clements’ involvement.
As to the specific intent to kill, the evidence established that the two gunmen were parked nearby for at least forty-five minutes to an hour before the shooting, which could easily constitute “lying in wait” for the victim. See La. R.S, 14:27 B(l). Moreover, they collectively fired at least twenty-six shots at the victim, as-he ran away. See, e.g., State v. Byrd, 12-0556; p. 12 . (La.App. 4 Cir. 6/5/13), 119 So.3d 801, 808-09 (specific intent to kill inferred based on the number of shots fired from semi-automatic weapon). - The jury could have reasonably inferred that Mr. Clements was one of the two perpetrators in this crime and that he had the specific intent to kill Ernest Augustine.[6]
|12As to the conviction for possession of a firearm by a convicted felon, Mr. Clements does not dispute that he has, a previous felony conviction, he only disputes his possession of the firearm. The gun for which Mr. Clements was convicted of possessing was found on the driver’s seat side, *720 plucked from its hiding place between the center console and the floorboard. The evidence' established that Mr. Clements was the driver of the car at the time of the shooting and the time of arrest. Moreover, the prosecution presented evidence of two shooters and two guns. ’ Because Officer Gaines saw the gun in plain view from his position' outside the driver’s side door, the jury evidently rejected the defendant’s testimony that he had no knowledge that the gun was there, The Louisiana Supreme Court has found possession to exist despite the prosecution’s failure to present evidence that the defendant was holding the gun or that his fingerprints were on it, and despite another individual claiming ownership of the weapon. See Johnson, 03-1228, pp. 7-8, 870 So.2d at 1000. We thus find, in the light most favorable to the prosecution, that a jury could have reasonably inferred that Mr. haClements exercised dominion and control over the gun and that he was knowingly in constructive possession of it.
Finally, as to the” possession of heroin, Sgt. Dupree testified that she clearly saw Mr. Clements drop the bag of heroin from his left hand. She explained that, upon approaching the vehicle, she specifically kept an eye on Mr. Clements’ hands,- because “[ojfficers get killed with subjects’ hands.... ” The jury was free to credit- her testimony against the testimonies of Mr. Clements and Mr. Coleman, and evidently found Sgt, Dupree’s statements more credible. We thus conclude that the prosecution presented sufficient evidence to establish Mr. Clements knowingly possessed heroin.
CONCLUSION
We find that, viewed in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the prosecution proved all the essential elements of attempted second degree murder, possession of a firearm by a convicted felon, and possession of heroin.
DECREE
The convictions and sentences of Darri-us Clements are affirmed.
AFFIRMED.

. Mr. Clements raised a second assignment of error, claiming that he had been denied his right of appellate review based on appellate counsel's inability to listen to the jailhouse phone call recordings. The prosecution then resubmitted another copy of the recordings on January 5, 2016. We have since confirmed with appellate counsel that she has been able to listen to the resubmitted phone calls. Thus, we consider this issue resolved and the assignment of error moot.

. We have, as we always do, examined the record for errors patent. See La.C.Cr.P. art. 920(2). We have detected none pertaining to Mr. Clements’ conviction.

. The car was initially stopped .for a broken headlight, although the officers eventually issued citations for multiple traffic violations.

. According to the Orleans Parish Docket Master, Mr, Coleman also pled guilty to possession of heroin, two counts of possession of a firearm by a convicted felon, and illegal possession of a stolen firearm. He entered his pleas on September 20, 2014 and was sentenced on November 5, 2014, the day of Mr. Clements’ trial.

. Moreover, we note that Kresta Carter described the license plate on the black car, which was a temporary paper tag attached to the back window. Officer Gaines testified that he wrote a citation for the Pontiac’s failure to have a license plate. When pressed further, the officer stated that the car did have a temporary tag but that it was no longer "good.”

. Mr. Clements also takes issue with the anonymous Crimestoppers tip,' wherein the tipster claimed to have recognized him from the surveillance video.- He argues that the video quality is so poor, no one could have possible identified him as one of the shooters. Generally, the veracity' of an anonymous tip is analyzed in the context of an investigatory stop, which requires reasonable suspicion. See, e.g., State v. Guillot, 12-0726, p. 6 (La. App. 4 Cir. 4/17/13), 115 So.3d 624, 628. Here, however, Det. Johnson used the tip, which named Darrius Clements and Paul Coleman as the shooters, as an impetus for his investigation and subsequent arrest of the two men based on probable cause. "Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense.” State v. Scales, 93-2003, p. 6 (La.5/22/95), 655 So.2d 1326, 1331.
After receiving the tip, Det. Johnson discovered both men had been arrested the same day in a black Pontiac with two 9 mm guns, which matched evidence from the shooting. He then compared their photos and found them consistent with witness statements. Det. Johnson then sent the shell casings found at the scene and the firearms recovered from the Pontiac to the crime lab for comparison. When the ballistics reports revealed a match, he prepared an arrest warrant for Mr. Clements and-Mr. Coleman. While the initial Crimestoppers tip may have been insufficient on its own to establish probable cause or reasonable suspicion, see Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), investigators were able to corroborate this tip with ballistics evidence and eyewitness statements. Thus, under the totality of the circumstances, the tip and corroborating evidence provided probable cause for arrest. See Scales, 93-2003, p. 6, 655 So.2d at 1331-32. See also Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (adopting "totality of the circumstances” test used to determine whether probable cause exists on the basis of a corroborated anonymous tip).