STATE OF LOUISIANA            *         NO. 2019-KA-0186

VERSUS                     *         COURT OF APPEAL

TRAE WILLIAMS            *         FOURTH CIRCUIT

                                    *         STATE OF LOUISIANA

                                    *

                                    *

                          * * * * * * *

**LOBRANO, J., DISSENTS WITH REASONS.**

I respectfully dissent from the majority's opinion reversing the manslaughter conviction of the defendant Trae Williams ("Defendant"). For the reasons that follow, I would affirm the verdict reached by the jury as well as the sentence imposed by the district court below.

Defendant was convicted for the shooting death of Eddie Salvant, III ("Victim"), that occurred on April 9, 2014. An eyewitness ("Eyewitness") testified that he saw Defendant shoot Victim.

Victim's daughter ("Daughter") testified that Curtis Williams, Sr. ("Mr. Williams") was Victim's stepfather and is Defendant's grandfather and that Mr. Williams was married to her grandmother, Verna Williams ("Mrs. Williams"). Defendant's father, Curtis Williams, Jr., was incarcerated at the Louisiana State Penitentiary at Angola for attempted murder at the time of trial. Daughter testified that Mr. Williams had raised Defendant and that Defendant and Mr. Williams were very close and protective of one another. They both lived in the same house with Mrs. Williams. Mrs. William was deceased at the time of the trial.

Testimony revealed that Mr. Williams and Defendant had a known adversarial familial relationship with Victim and there was strife in the family, particularly between Victim and Mr. Williams. Daughter explained that Victim had a very close relationship

1

with his mother,[1] Mrs. Williams, but Victim and his stepfather, Mr. Williams, never got along.

Eyewitness had friends who lived in the area of the murder and had known the parties involved for some time. Eyewitness also testified that tension and problems had existed between Defendant and Victim for many years. Daughter collaborated this testimony that a long-standing conflict had existed between Victim and Defendant and testified that such an adversarial relationship also existed between Victim and Mr. Williams.

Daughter testified that two days before her father's murder, Victim called her and was very angry. When Daughter was asked what Victim told her on the telephone, the defense objected to this testimony as hearsay. The district court overruled the objection and allowed the testimony of the telephone call finding that Daughter's testimony fell under the "present sense impression" exception to the hearsay rule pursuant to La. C.E. art. 803(1).[2] Daughter then testified that Victim said that Defendant and Mr. Williams just had an altercation with him. Daughter told Victim that she was on her way, arriving at Victim's apartment shortly thereafter. Upon her arrival, Victim told her that he had called 911 because Defendant and Mr. Williams were going to kill him. The defense *did not object* to this testimony. It did, however, object when the following question was asked:

> Q:     And after that, did - - what transpired between you and your dad regarding this incident?
>
> A:     He basically just told me, like, why the - - why the incident happened. He said that  - -

---

[1] Victim visited his mother's house daily to help take care of her.

[2] La. C.E. art. 803(1) provides:
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Ms. Thompson:
Objection. It's no longer present sense impression.

Although the district court did not rule on the objection, the State did not respond and changed its line of questioning.

In addition, the defense objected to a statement made by the State during opening statement and a question asked by the State to Detective Kent during direct examination, both referring to Crime Stopper tips. The district court sustained the defense objection as to the State's question to Det. Kent and jury never heard any testimony regarding Crime Stopper tips.

The majority reverses the manslaughter conviction and finds that the following testimony and statements were erroneously admitted into evidence as hearsay: (1) the testimony of Daughter as to Victim's telephone call to her two days before the murder where Victim stated that he just had a fight with Defendant and Mr. Williams; 2) the testimony of Daughter as to her conversation with Victim at his apartment after the telephone call where Victim stated that he called 911 and thought that Defendant and Mr. Williams were going to kill him; and (3) the references to Crime Stopper tips in the State's opening statement and question during direct examination. The majority finds that Defendant's "conviction is based on [this] hearsay evidence" that "cannot be construed as harmless error."

I disagree with the majority and I find that, even assuming that the district court erroneously allowed the admissions of hearsay evidence, such admissions were harmless error. "A reversal of a defendant's conviction is appropriate only if, pursuant to a harmless error analysis, there is "a reasonable possibility that the evidence might have contributed to the verdict." *State v. Skipper,* 11-1346, p. 10 (La.App. 4 Cir. 10/10/12), 101 So.3d 537, 544 (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Gibson,* 391 So.2d 421, 426-27 (La. 1980)). Furthermore, in making this determination, "importance of the evidence to the State's case, the presence or

3

absence of additional corroboration of the evidence, and the overall strength of the State's case" are factors that should be considered. *State v. Weber,* 02-0618, p. 21 (La.App. 4 Cir. 12/4/02), 834 So.2d 540, 554 (citing *State v. Wille,* 559 So.2d 1321, 1332 (La. 1990)). Nevertheless, "'even if testimony is inadmissible hearsay, if it is merely cumulative or corroborative of other testimony adduced at trial, then the admission of the hearsay is harmless.'" *State v. Hamdalla*, 12-1413, p. 12 (La.App. 4 Cir. 10/2/13), 126 So.3d 619, 625 (quoting *State v. McIntyre*, 381 So.2d 408, 411 (La. 1980)).

I find the admission of Daughter's testimony regarding the conversations she had with Victim two days before his murder revealing that Defendant and Mr. Williams had a hostile relationship with Victim and that he was in fear of his life was harmless error. Testimony based on personal knowledge of Eyewitness and Daughter collaborated that Defendant and Mr. Williams had a long-standing, well-known, adversarial familial relationship with Victim. Daughter testified that Defendant and Mr. Williams were very close and protective of each other. Various testimony of familial relationships characterized as adversary and as protective were undisputed at trial. Daughter testified, without objection, to the history of animosity existing with Defendant and Mr. Williams on one side and Victim on the other due to family issues. Eyewitness corroborated this testimony about their adversary relationship.

In addition, the two references to Crime Stopper tips were not evidence and, at best, were vague and ambiguous. The jury heard nothing about what the Crime Stopper tips may have revealed and, thus, was not hearsay evidence on which the majority can rely to reverse Defendant's conviction.

Moreover, I find that the majority errs by giving no weight to the uncontroverted testimony of Eyewitness. Credibility determinations, as well as the weight attributed to the evidence, are soundly within the province of the fact finder. *State v. Scott*, 12-1603, p. 11 (La.App. 4 Cir. 12/23/13), 131 So.3d 501, 508. A jury may accept as true the

4

testimony of any witness, even a single witness, and find such testimony sufficient to establish each essential element beyond a reasonable doubt. *State v. Clements*, 15-0630, p. 7 (La.App. 4 Cir. 5/4/16), 194 So.3d 712, 717, *writ denied,* 16-1069 (La. 5/12/17) 220 So.3d 747. "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *State v. George,* 15-1189, p. 10 (La.App. 4 Cir. 11/9/16), 204 So.3d 704, 711, *writ denied,* 16-2242 (La. 3/24/17), 216 So.3d 814. Thus, I find that the majority impinged on the jury's fact-finding function by discrediting Eyewitness' testimony.

Based on the evidence presented at trial, it is likely that the jury chose to believe the uncontested testimony of Eyewitness, which is soundly within its province. As we stated in *Clements*, 15-0630, pp. 7-8, 194 So.3d at 717:

> [W]e are highly deferential to the findings of the trier of fact. *See State v. Armstead,* 14-0036, p. 11 (La.App. 4 Cir. 1/28/15), 159 So.3d 502, 512. Thus, the jury may accept as true the testimony of any witness, even a single witness, and find such testimony sufficient to establish each element of an offense beyond a reasonable doubt. *See State v. Sanchell,* 11-1672, p. 6 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, 680. Our review will only impinge on this fact-finding function to the extent necessary to assure compliance with *Jackson v. Virginia. See State v. Macon,* 06-481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285. Thus, we will *only* tread on a jury's presumed acceptance of a witness's testimony when that testimony is implausible or clearly contrary to the evidence. *See Mussall,* 523 So.2d at 1311; *see also Armstead,* 14-0036, p. 12, 159 So.3d at 512. [Emphasis in original.]

From his initial statement to Det. Kent, claiming to have seen the shooting, Eyewitness identified Defendant as the shooter and never wavered, contrary to Defendant's argument that Eyewitness lied in all his statements in order to clear his name and make a deal with the State for sentencing leniency on his burglary and drug charges. Furthermore, Det. Kent's testimony verified Eyewitness' steadfast assertion that Defendant shot Victim, indicating that Eyewitness initially identified Defendant as the shooter on May 8, 2014, before any plea deal was offered by the State.

The jury heard Eyewitness under direct examination admit that he was a heroin

5

addict and was waiting for his drug dealer to arrive at the time of the shooting; he did, however, testify that he was sober at the time of the shooting and had been clean since his release from jail. He readily disclosed that he identified Defendant as the shooter only after he heard that Defendant's family was claiming that he himself was the actual shooter.[3] Eyewitness was candid about his extensive criminal history and years using drugs. Eyewitness testified that he had been labeled a "rat" on the streets and could no longer visit the area where he witnessed the shooting. He also stated that he did not want to be testifying at trial because of the stigma associated with testifying about the murder committed by Defendant, but had to tell the truth.

The trial testimony further demonstrates that the defense had and took the opportunity to vigorously and extensively cross-examine Eyewitness to show his potential bias and prove he was lying. The defense questioned Eyewitness at length on the benefits of the plea agreement reached with the State, comparing the sentence he received under the agreement to the maximum sentence he might have served had he been convicted of the charges he was facing.

Based on the evidence presented at trial, the jury chose to believe the uncontested testimony of Eyewitness, which is soundly within its province. The strength of the State's case rested on the testimony of Eyewitness. Defendant failed to refute this testimony. In addition, the jury heard from both Daughter and Eyewitness that Victim and Defendant did not get along. Thus, I find that the majority impinged on the jury's fact-finding function by discrediting Eyewitness' testimony, which was sufficient to support the jury's verdict of manslaughter. I find that admission of Daughter's testimony and the references to Crime Stopper tips constitute harmless error and would not require a reversal Defendant's conviction on that basis.

---

[3] Eyewitness testified:

> I'm not taking a charge for nobody. I'm--I might be a burglar. . .
> But I'm no murderer. That's a big difference.

Nonetheless, I find that the telephone call between Daughter and Victim clearly falls under the "present sense exception" to the hearsay rule pursuant to La. C.E. art. 803(1). The call by Victim was made immediately after the altercation between Victim and Defendant and Mr. Williams and while Victim was still very angry. "In determining whether a statement qualifies as a present sense impression exception to the hearsay rule, the critical factor is whether the statement was made while the declarant was perceiving the event or immediately thereafter." *State v. Francois*, 13-0616, p. 20 (La.App. 5 Cir. 1/31/14), 134 So.3d 42, 56. Here, Daughter's testimony indicates that the telephone call from her father was made immediately after the subject altercation. In any event, as discussed above, any error by the district court admitting this testimony was harmless.

As for the hearsay testimony of Daughter, that Victim told her at his apartment that he feared for his life and thought Defendant and Mr. Williams were going to kill him, the defense failed to object to its admission and, thus, this issue was not preserved for appeal.

A contemporaneous objection is necessary to afford the district court an opportunity to prevent or cure any error, and the defense is limited on appeal to those grounds articulated at trial. La. C.Cr.P. art. 841; *State v. Keys,* 12-1177, p. 13 (La.App. 4 Cir. 9/4/13), 125 So.3d 19, 31 (citing *State v. Baker,* 582 So.2d 1320, 1336 (La.App. 4 Cir.1991)). It is well-settled that where a defendant fails to preserve an issue for appeal pursuant to Art. 841, this court will refuse to review or consider that issue. *State v. Ramirez,* 13-1554, p. 9 (La.App. 4 Cir. 11/12/14), 154 So.3d 636, 641 (reviewing the testimony of two law enforcement officers for hearsay where the defendant objected to their testimony but declining review of a third officer's testimony where the defendant did not object); *Keys,* 12-1177, p. 13, 125 So.3d at 31 (refusing to review identification testimony for hearsay where the defendant did not object to the testimony on that basis when it was introduced). Thus, because this issue was not preserved for appeal, the majority errs by relying on it to support a reversal of Defendant's conviction.

However, even if this issue were preserved for appeal, this testimony falls under the "state of mind exception" to the hearsay rule pursuant to La. C.E. art. 803(3) and is in line with cases allowing extrajudicial statements of a decedent made shortly before the crime.

The majority relies on *State v. Parks,* 08-0423, p. 12 (La.App. 5 Cir. 11/25/08), 2 So.3d 470, 477 for the proposition that: "[H]earsay evidence showing the victim's state of mind for the purpose of proving the motive of the defendant is inadmissible, since its prejudicial effect on the defendant far outweighs its probative value as to the victim's state of mind," quoting *State v. Leonard,* 05-0042, p. 16 (La.App. 5 Cir. 7/26/05), 910 So.2d 977, 987. This reliance, however, is misplaced. *Parks* recognized that "non-testimonial" statements by a victim, *i.e.,* statements made to someone other than the police, that were informal and without coercion, and that the witness had no expectation that the statements would be of later use to help establish that defendant committed a crime, could be admissible under the "state of mind" hearsay exception found in La. C.E. art. 803(3). *Parks,* 08-0423, p. 16, 2 So.3d at 479-80. The *Parks* court found that the victim's statements made to her niece shortly before her murder were admissible to establish the victim's immediate fear of the defendant. *Id.* I find the same is true in the instant case.

I find further support in *State v. Magee,* 11-0574 (La. 9/28/12), 103 So.3d 285. There, the defendant was convicted of first degree capital murder for the deaths of his estranged wife and minor son. At trial, the district court allowed the testimony of the victim's cousin describing a conversation the witness had with the victim **three days before the murder** after the victim met the defendant to retrieve their children following a weekend the children had spent with their father. When the victim and the children had arrived back at the house, the witness testified that the victim was visibly upset and shaking. Over defense objection, and pursuant to La. C.E. art. 803(3), the witness

testified that the victim "was very scared and nervous. She said she was afraid the he was going to hurt her." *Id.,* 11-0574, pp. 47-48, 103 So.3d at 319.

In finding no error in the admission of this testimony, the Supreme Court stated

> This court has recognized that extrajudicial statements of a decedent made shortly before the crime that are relevant to the circumstances immediately preceding the murder are admissible under the state of mind exception. Admission in this instance is "based upon the expedient rule sometimes relied upon in homicide cases that 'conduct or declarations of the decedent shortly before his killing may sometimes be admissible as tending to show the immediately antecedent circumstances explanatory of the killing and connecting the accused with it.' " *State v. Weedon,* 342 So.2d 642, 646 (La.1977), *quoting State v. Raymond,* 258 La. 1, 245 So.2d 335, 342 (1971) (Tate, J., concurring).

*Id.,* 11-0574, p. 48, 103 So.3d at 319. The Court noted that the exception to hearsay is based on the belief that a spontaneous expression of a declarant's condition at the time the statement is made is generally a reliable indicator of the declarant's state of mind. 2 MCCORMICK ON EVIDENCE § 274 (6th ed. 2006) ("[T]he special assurance of reliability for statements of present state of mind rests upon their spontaneity and resulting probable sincerity.") *Id.*, 11-0574, p. 43, 103 So.3d at 316.

Because the district court did not err in admitting Daughter's testimony regarding Victim's existing fearful state of mind and his present sense impression of the altercation and, because any error in the admission of evidence was harmless, Defendant was not deprived of the right to confront witnesses against him, to due process, and to a fair trial. The district court's evidentiary rulings do not undermine the reliability of the jury's verdict in this case

Finding no merit to any of the errors assigned by Defendant on appeal, I would affirm Defendant's conviction and sentence. Therefore, I respectfully dissent.